232 N.J. Super. 136 (1989)
556 A.2d 807
IN RE DEPARTMENT OF COMMUNITY AFFAIRS ORDER OF MARCH 15, 1988 REGARDING BURLINGTON COUNTY RECYCLING FACILITY.
Superior Court of New Jersey, Appellate Division.
Submitted February 21, 1989.
Decided April 12, 1989.
*137 Before Judges PETRELLA, GRUCCIO and LANDAU.
Dyer, Hendren & Harrington, attorneys for appellant Township of Delran (John E. Harrington, on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent Department of Community Affairs, State of New Jersey (James J. Ciancia, Assistant Attorney General, of counsel; John J. Chernoski, Deputy Attorney General, on the brief).
Michael J. Hogan, Burlington County Solicitor, attorney for respondent County of Burlington (Glen Filippone, Assistant County Solicitor, on the letter brief).
The opinion of the court was delivered by LANDAU, J.A.D.
*138 Delran Township (Delran) appeals from a final decision of the Department of Community Affairs (DCA) whereby it exercised power under N.J.S.A. 52:27D-124(k) to issue a Certificate of Occupancy to the County of Burlington (the County) for a recycling facility in Delran. We affirm.

FACTS
In 1984, Burlington County decided to construct a recycling center in Delran, and purchased 4.5 acres of land near Route 130 for its construction. On March 27, 1987, in accordance with the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., the Department of Environmental Protection (DEP) issued an Environmental Impact Statement Approval and Findings of Facility Consistent with the Solid Waste Management Plan for the recycling center, thereby allowing construction and operation of the center. The facility was constructed, but not without court proceedings required to compel Delran's construction official, Donatius McMahon, to issue a construction permit.
When the County applied to McMahon for a Certificate of Occupancy in January 1988, it was denied. One reason given was asserted plumbing subcode violations. It was also denied by McMahon, on advice of the township attorney, because "prior approvals" had not been obtained, particularly adoption and approval of a recycling plan by DEP in accordance with the New Jersey Statewide Mandatory Source Separation and Recycling Act, N.J.S.A. 13:1E-99.11 et seq.
Thereafter, the County Administrator sought the DCA's intervention to impartially perform the final construction code inspection. The Administrator suggested that Delran was trying to delay the project. The Administrator urged: "Burlington County has invested considerable financial resources in an effort to accommodate numerous requests by the municipality. However, at this time existing landfill capacity is quickly diminishing, and it is essential to fully implement Burlington County's *139 Recycling Program which necessitates the operation of this facility."
The DCA concluded that there were no outstanding DEP "prior approvals" required which would bar issuance of a Certificate of Occupancy. This was based on information received from a DEP representative and confirmed by letter dated February 25, 1988. On February 29, 1988, the DCA advised McMahon that DEP "prior approvals" were not at issue, and ordered him to issue a Certificate of Occupancy within 48 hours or advise the DCA of the remaining outstanding issues within the same time frame. No certificate was issued, nor did McMahon respond to the DCA by supplying a list of remaining problems.
The County again applied for a Certificate of Occupancy on March 14, 1988. However, by March 15, the DCA had issued an order, pursuant to N.J.S.A. 52:27D-124(k), assuming State Uniform Construction Code Act (Code) jurisdiction over the project to ensure that the Code was administered objectively.
Although Delran claims that the DCA issued the order before it had an opportunity to act on the County's application, it ignores the previous history of denial and delay.
On March 16, 1988, the DCA inspected the premises and issued a temporary certificate. A permanent certificate was conditioned upon correction of a sprinkler system problem and final approval by the County Soil Conservation District. Neither condition was determined to be serious enough to warrant the denial of the temporary certificate.
On March 17, 1988, Delran filed a Notice of Appeal contesting the DCA's March 15 order.
On March 23, 1988, Delran filed a petition with the Commissioner of the Department of Community Affairs (Commissioner) for a hearing pursuant to the Administrative Procedure Act to contest the grant of a permanent Certificate of Occupancy. Delran and McMahon also moved before the Commissioner for a stay.
*140 On April 12, 1988, the Commissioner denied Delran an administrative hearing, concluding that "neither the Township nor its construction official [were] entitled, under the Constitution or State statute, to an administrative hearing with regard to either the DCA's assumption of jurisdiction over the County's recycling facility or its issuance of a temporary or permanent Certificate of Occupancy." The Commissioner also denied a stay, determining that the applicant was not likely to succeed in challenging the authority of the DCA to assume jurisdiction under the Code and issue a Certificate of Occupancy. Further, the Commissioner asserted that the public interest required denial of Delran's requests.
The DCA issued a permanent Certificate of Occupancy to the County on April 28, 1988.
Delran also filed a Notice of Appeal challenging the final decision of the Commissioner and issuance of the certificate.[1] Delran claims that assumption of jurisdiction and issuance of the Certificate of Occupancy were improper.

LAW
N.J.S.A. 52:27D-124 provides:
The commissioner shall have all the powers necessary or convenient to effectuate the purposes of this act, including, but not limited to, the following powers in addition to all others granted by this act:
* * * * * * * *
k. To monitor the compliance of local enforcing agencies with the provisions of the "State Uniform Construction Code Act," P.L. 1975, c. 217 (C. 52:27D-119 et seq.), to order corrective action as may be necessary where a local enforcing agency is found to be failing to carry out its responsibilities under the act, to supplant or replace the local enforcing agency for a specific project, and to *141 order it dissolved and replaced by the department where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the "State Uniform Construction Code Act." [N.J.S.A. 52:27D-124.]
Delran urges that the phrase "where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the `State Uniform Construction Code Act,'" limits the power of the Commissioner "to supplant or replace the local enforcing agency for a specific project." The DCA, whose opinion is entitled to some deference because of its expertise in this area, see Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973), asserts that the requirement for a finding of repeated or habitual failure to enforce the Code applies only to dissolving an agency and not to replacing it for a specific project. We agree with the DCA's interpretation of the Act.
Delran's interpretation does not comport with accepted rules of statutory construction. Where no contrary intention appears, qualifying words refer solely to the last antecedent. State in Interest of S.Z., 177 N.J. Super. 32, 35 (App.Div. 1981); Gudgeon v. County of Ocean, 135 N.J. Super. 13, 17 n. 1 (App.Div. 1975); State v. Congdon, 76 N.J. Super. 493, 502 (App.Div. 1962); Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152, 168 (Ch.Div. 1976), aff'd 156 N.J. Super. 513 (App. Div. 1978); 2A Sutherland, Statutory Construction, § 47.33 at 245 (4th ed. 1984). Thus, the phrase "where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the `State Uniform Construction Code Act'" applies only to the immediately preceding clause "to order it [the local enforcing agency] dissolved and replaced by the department." This conclusion is buttressed by the rule of grammatical construction which dictates that separation of a qualifying phrase from antecedents by a comma evidences an intent that the phrase apply to all antecedents, instead of solely to the immediately preceding one. See Gudgeon, 135 N.J. Super. at 17; N.J. Ins. Underwriting Assoc. v. Clifford, 112 N.J. Super. 195, 204 (App. Div. 1970). Had the Legislature intended the qualifying clause to modify all the antecedents in N.J.S.A. 52:27D-124(k), a *142 comma would have been inserted between the words "to order it dissolved and replaced by the department" and "where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the `State Uniform Construction Code Act.'"
N.J.S.A. 52:27D-124(k) was enacted in 1985, after the tragic "Great Adventure" fire, to remedy perceived "defects" in New Jersey's Uniform Construction Code Act. The Senate Committee Statement concerning this section provides:
Senate Bill No. 2114 remedies two defects in New Jersey's Uniform Construction Code Act that were brought to light at the hearing regarding the fire at Great Adventure held by the New Jersey Fire Safety Commission and the Senate Law, Public Safety and Defense Committee on June 6, 1984.
Under current law, the Department of Community Affairs is responsible for the overall administration and enforcement of the Uniform Construction Code Act; yet the act does not empower the department to take effective action when a municipal governing body fails to carry out its responsibilities to enforce the Uniform Construction Code, nor does it allow the department to take enforcement action to remedy hazards at a particular building.
This bill would remedy the two defects described above by granting to the Commissioner of the Department of Community Affairs the power to enforce and administer the provisions of the "State Uniform Construction Code Act," P.L. 1975, c. 217 (C. 52:27D-119 et seq.) and the code promulgated thereunder and to prosecute violators of the act or the code in administrative hearings and in civil proceedings in State and local courts.
The bill also grants to the commission the power to monitor the compliance of local enforcing agencies with the act, to order corrective action if a local enforcing agency is found to be failing to carry out its responsibilities under the act, to supplant or replace the local enforcing agency for a specific project, and to order it dissolved and replaced by the department if the local enforcing agency repeatedly or habitually fails to enforce the provisions of the act. [Senate Public Safety and Defense Committee Statement, S. No. 2114, L. 1985, c. 21 (reprinted in annotations following N.J.S.A. 52:27D-124).]
This statement demonstrates that the Legislature clearly intended that this statute be interpreted so as to enable the DCA to take effective action to assure proper enforcement of the Code, for which it is ultimately responsible, when a local enforcing agency does not carry out its responsibilities under the Act.
Delran contends that if repeated and habitual failure to enforce the Code is not the applicable statutory standard, then *143 the DCA's order is void because there are no regulations or standards to govern the DCA's assumption of jurisdiction over a specific project, and therefore the actions undertaken were unreasonable, arbitrary and capricious. We disagree.
The grant of authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals. When reviewing an agency's determination, a reviewing court will reverse the decision only if it is arbitrary, capricious or unreasonable or is not supported by substantial credible evidence in the record as a whole. Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 70-71 (1985).
Generally, an administrative agency has discretion to exercise its statutory authority either by adjudication or rule-making. Department of Labor v. Titan Const. Co., 102 N.J. 1, 13 (1985). Case-by-case determinations are preferable where, as here, it is doubtful whether any generalized standard could be framed which would have more than marginal utility. NLRB v. Bell Aerospace Co., 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134, 154 (1974). See also SEC v. Chenery Corp., 332 U.S. 194, 202-203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947) (holding that "in [some] situations, the agency must retain power to deal with ... problems on a case-by-case basis if the administrative process is to be effective").
The Commissioner is expressly empowered to take action to remedy difficulties in enforcement which endanger the underlying purposes of the Code. N.J.S.A. 52:27D-124(k). It was not an abuse of discretion, under the circumstances presented in the case at bar, for the DCA to take action to prevent the Code from being used as a weapon in a local battle to halt placement of a recycling center in Delran, rather than being used to ensure that the center was constructed in accordance with the Code.
Delran also urges on appeal that the DCA's "conclusory" findings were inadequate; that the DCA's action is void because it was entitled to notice and an opportunity to be heard *144 before the DCA assumed jurisdiction or issued the Certificate of Occupancy; and that issuance of the Certificate of Occupancy was improper until the County adopts a plan under the Mandatory Recycling Act or the Law Division, in a case pending before it, decides that the County is otherwise exempt from the Act.
We have considered the parties' briefs in light of applicable law, and conclude that these claims are clearly without merit. R. 2:11-3(e)(1)(D)-(E). We affirm for substantially the same reasons expressed by the Commissioner in his April 12, 1988 decision.
We add that the three pages of findings contained in the Final Decision of the DCA were adequate, complete and specific. See Riverside General v. N.J. Hosp. Rate Setting Com'n, 98 N.J. 458, 468 (1985).
Affirmed.
NOTES
[1] Thus Delran has apparently filed two appeals. However, one does not appear to have been perfected. In any event, the parties have both treated all the issues in a single brief, and as one appeal. Our check with the Appellate Division Clerk reveals only one filing. Lest there be any question, our opinion is intended to be dispositive as to both the present appeal and the aborted companion appeal.