571 A.2d 312

THE TOWNSHIP OF EDISON, PLAINTIFF–APPELLANT, v. LEONARD S. COLEMAN, JR., COMMISSIONER, NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, AND DENNIS WARFORD, SUPERVISOR, BUREAU OF REGULATORY AFFAIRS, DEFENDANTS–RESPONDENTS.

LEONARD S. COLEMAN, JR., COMMISSIONER OF THE DEPARTMENT OF COMMUNITY AFFAIRS, BUREAU OF REGULATORY AFFAIRS, STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. THE TOWNSHIP OF EDISON AND ALBERT RAINFORD, CONSTRUCTION OFFICIAL IN HIS OFFICIAL CAPACITY, DEFENDANTS–APPELLANTS.

IN THE MATTER OF THE DEPARTMENT OF COMMUNITY AFFAIRS ORDER OF JUNE 9, 1988.

IN THE MATTER OF ASPEN AT EDISON AND EDISON GLEN CONDOMINIUM, DEPARTMENT OF COMMUNITY AFFAIRS ORDER DATED JUNE 9, 1988.

IN THE MATTER OF EDISON TOWNSHIP, DEPARTMENT OF COMMUNITY AFFAIRS ORDER OF AUGUST 30, 1988.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1990—Decided March 9, 1990.

Before Judges J.H. COLEMAN, MUIR, Jr. and SKILLMAN.

*Paul A. Massaro* argued the cause for appellant Albert Rainford.

*Peter A. DeSarno* argued the cause for appellant Township of Edison.

*John Chernoski,* Deputy Attorney General, argued the cause for respondent Department of Community Affairs (*Robert J. Del Tufo,* Attorney General; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *Diane M. Verlangieri,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The parties to these seven consolidated appeals are public agencies and officials with statutory responsibilities for the enforcement of the Uniform Construction Code (the Code), *N.J.S.A.* 52:27D–119 *et seq.* Appellant Edison Township is a local enforcing agency and appellant Rainford is Edison's construction official. *See N.J.S.A.* 52:27D–126. Respondent Department of Community Affairs (DCA) has general authority to enforce the Code and to supervise local enforcing agencies. *See N.J.S.A.* 52:27D–124. This appeal involves the DCA's exercise of its authority under *N.J.S.A.* 52:27D–124(k) to supplant Edison's code enforcement with respect to two specific projects and to monitor Edison's compliance with its enforcement responsibilities under the Code.

Appellants' resistance to the DCA's assertion of its supervisory powers over code enforcement in Edison has generated a lengthy and complex procedural history. As a result of information DCA received regarding possible code violations at two condominium development projects called Aspen at Edison and Edison Glen, it issued an order on June 3, 1988 directing appellants to produce their original files relating to these

projects. DCA's review of the files produced by appellants did not allay its concerns. Consequently, it issued a second order on June 9, 1988 assuming regulatory jurisdiction over these two projects and directing appellants to turn over all plans, permits, inspection records, and other documents pertinent to the projects.

On June 13, 1988, Edison filed a prerogative writ action in the Law Division, alleging that DCA's removal of the municipality's files relating to the Aspen at Edison and Edison Glen projects under the authority of its June 3, 1988 order was unlawful and seeking the return of those files. On June 20, 1988, the Law Division transferred Edison's action to this court based upon our exclusive jurisdiction to review the actions of a state agency.

While Edison's prerogative writ action was pending in the Law Division, DCA filed an action in the Chancery Division on June 17, 1988, alleging that appellants had refused, in violation of DCA's June 9th order, to relinquish jurisdiction and to turn over their files pertaining to the Aspen at Edison and Edison Glen projects, and seeking enforcement of that order. On July 29, 1988, the Chancery Division entered judgment in favor of DCA directing appellants to comply with the June 9th order. Edison and Rainford each filed separate notices of appeal from both DCA's June 9th order and the final judgment of the Chancery Division enforcing that order.

During the pendency of the Chancery Division action, Edison and Rainford requested DCA to afford them a hearing before the Office of Administrative Law with respect to the June 9th order. The Commissioner of DCA denied these requests by separate, virtually identical final decisions dated August 9, 1988, which concluded that DCA's assumption of regulatory jurisdiction over the two projects did not give rise to a "contested case" entitling Edison or Rainford to a hearing before the

Office of Administrative Law. The Commissioner's decisions stated in pertinent part:

> I further find that the Department has exercised a statutory right of preemption with regard to a specific project in accordance with N.J.S.A. 52:27D–124(k). Since the enactment of N.J.S.A. 52:27D–124(k), no municipality has had the right to the exclusive exercise of enforcement powers under the State Uniform Construction Code Act within its borders and an action by the Department pursuant to its right of preemption, including the obtaining of documents in connection with such preemption, does not constitute an intrusion upon the municipality's rights, and certainly not upon the rights of the Construction Official. [Edison and its Construction Official] lack standing to challenge the Department's exercise of this statutory right in an administrative hearing because the preemption order was not an action taken against [them].

Rainford also filed a notice of appeal from this decision.

Subsequent to assuming regulatory jurisdiction over the Aspen at Edison and Edison Glen projects, DCA also initiated proceedings to revoke Rainford's license to act as a construction official and to suspend for 60 days his license to act as plumbing subcode official. The documents initiating this proceeding included an order for Rainford to show cause why his licenses should not be temporarily suspended pending a final hearing on the Department's proposed actions. The matter was argued before an administrative law judge (ALJ) on August 11, 1988, who concluded that DCA had failed to establish the kind of emergent situation which would warrant a temporary suspension of Rainford's licenses. The ALJ also expressed the view that DCA could monitor Rainford's activities on an interim basis to assure that the Code was being properly enforced in Edison:

> ... [T]he Department has the ability and the authority to monitor his activities on a daily basis if they want to.
>
> ... [T]he Department of Community Affairs can approach this matter ... between now and the time of final hearing, ... to stay on top of the situation.... In other words, what they're seeking to do by way of suspending or revoking can be accomplished in another way and I would suggest that they go ahead and do that.

On November 1, 1988, the Commissioner adopted the ALJ's recommendation that Rainford's licenses should not be temporarily suspended pending a final decision in the proceedings

brought against him by DCA.[1]  In the interim, DCA issued another order directing Edison to notify DCA whenever it issued a certificate of occupancy for a building other than a one and two family dwelling and to furnish DCA with copies of all such certificates.  Rainford filed an additional notice of appeal from this order.

On November 30, 1988, we entered an order on our own motion consolidating the six appeals filed by Rainford and Edison as well as the prerogative writ action transferred to this court by the Law Division.

■  DCA's orders challenged in this appeal were issued pursuant to *N.J.S.A.* 52:27D–124(k), which provides:

> To monitor the compliance of local enforcing agencies with the provision of the "State Uniform Construction Code Act," P.L.1975, c. 217 (C. 52:27D–119 et seq.), to order corrective action as may be necessary where a local enforcing agency is found to be failing to carry out its responsibilities under that act, to supplant or replace the local enforcing agency for a specific project, and to order it dissolved and replaced by the department where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the "State Uniform Construction Code Act."

Appellants' primary arguments are that DCA's orders relative to its assumption of regulatory jurisdiction over the Aspen at Edison and Edison Glen projects are invalid, because DCA never made the finding, which appellants contend is required by *N.J.S.A.* 52:27D–124(k), that "the local enforcing agency repeatedly or habitually failed to enforce the provisions of the [Code]" and it failed to afford them a hearing with respect to this issue.  However, another panel of this court recently rejected substantially these same arguments in *In re Dep't of Community Affairs order of March 15, 1988 regarding Burlington Cty. Recycling Facility*, 232 *N.J.Super.* 136, 556 *A.*2d 807 (App.Div.1989):

---

[1]The Attorney General's brief states that an ALJ's initial decision was issued on March 16, 1989 which upheld the Order to Revoke and partially upheld the Order to Suspend.  We have not been advised of the Commissioner's final action in that matter.  In any event, that action is beyond the scope of this appeal.

Delran urges that the phrase "where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the 'State Uniform Construction Code Act,' " limits the power of the Commissioner "to supplant or replace the local enforcing agency for a specific project."

\*    \*    \*    \*    \*    \*    \*    \*

Delran's interpretation does not comport with accepted rules of statutory construction. Where no contrary intention appears, qualifying words refer solely to the last antecedent.... Thus, the phrase "where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the 'State Uniform Construction Code Act' " applies only to the immediately preceding clause "to order it [the local enforcing agency] dissolved and replaced by the department." This conclusion is buttressed by the rule of grammatical construction which dictates that separation of a qualifying phrase from antecedents by a comma evidences an intent that the phrase apply to all antecedents, instead of solely to the immediately preceding one.... Had the Legislature intended the qualifying clause to modify all the antecedents in *N.J.S.A.* 52:27D–124(k), a comma would have been inserted between the words "to order it dissolved and replaced by the department" and "where the local enforcing agency repeatedly or habitually fails to enforce the provisions of the 'State Uniform Construction Code Act.' " [*Id.* at 141–142, 556 *A.*2d 807; citations omitted].

Since the court concluded in the *Burlington County Recycling* matter that DCA could supplant a local enforcing agency with respect to a specific project without finding that the agency had repeatedly or habitually failed to enforce the Code, it further concluded that appellant's argument that a local enforcing agency was entitled to notice and an opportunity to be heard before DCA could assume jurisdiction was clearly without merit. *Id.* at 143–144, 556 *A.*2d 807.

We agree with the court's analysis and conclusions in the *Burlington County Recycling* matter. The evident intent of the Legislature in enacting *N.J.S.A.* 52:27D–124(k) in the wake of the tragic "Great Adventure" fire was to give DCA the requisite authority "to take effective action to assure proper enforcement of the Code, for which it is ultimately responsible, when a local enforcing agency does not carry out its responsibilities under the Act." *Id.* at 142, 556 *A.*2d 807. To this end, the Legislature gave the DCA plenary authority to determine when the public interest would be best served by DCA's assumption of regulatory authority over a particular project. The

Legislature did not authorize a local enforcing agency to contest DCA's assumption of jurisdiction through a hearing before an ALJ which inevitably would delay enforcement of the Code in situations that could result in tragic consequences.

■ Appellants' reliance upon *N.J.A.C.* 5:23–4.3(g)(1) is misplaced. This regulation provides:

Whenever the department shall have reasonable cause to believe that a municipality is not carrying out its functions as intended by the act and regulations, it shall forward by certified or registered mail, return receipt requested, to the governing body of any such municipality, a notice stating the nature of the alleged municipal failure to perform, the implications of such failure, and a statement of intention to seek the order of a court of competent jurisdiction requiring that the municipality act in accordance with the regulations; or in the alternative, if warranted, that the department be established as the enforcing agency in such municipality; or for any other relief that the court may deem appropriate.

*N.J.A.C.* 5:23–4.3(g)(1), which DCA adopted prior to the enactment of *N.J.S.A.* 52:27D–124(k), was limited by its terms to situations where DCA asserts that a local enforcing agency has failed to properly perform its responsibilities and consequently intends either to seek a court order requiring the local agency to properly perform its responsibilities or to establish DCA as the enforcing agency in the municipality. However, as previously discussed, DCA's actions challenged on this appeal do not rest on a factual finding that Edison has failed to properly perform its responsibilities under the Code and DCA does not seek a court order compelling municipal action or the assumption by DCA of the role of the enforcing agency in Edison. Consequently, *N.J.A.C.* 5:23–4.3(g)(1) is inapplicable to DCA action supplanting a local enforcing agency with respect to a specific project.[2]

---

[2]We note that this regulation was amended, effective November 6, 1989, to clearly indicate its inapplicability to the kind of proceedings involved in this appeal. 21 *N.J.R.* 3460–3461. In its present form, the regulation is now codified as *N.J.A.C.* 5:23–4.3(f).

We also conclude that *N.J.S.A.* 52:27D–124g has no applicability to this case. This subsection provides in relevant part that:

> Any person aggrieved by any ruling, action, order, or notice of the commissioner pursuant to this act shall be entitled to a hearing pursuant to the "Administrative Procedure Act."

Appellants assert that they are "persons aggrieved" by the DCA's preemption and monitoring orders and that they are thus entitled to have the matter adjudicated in an administrative hearing. However, *N.J.S.A.* 52:27D–124g must be read within the context of the legislative enactment of which it is a part. *N.J.S.A.* 52:27D–124a through *N.J.S.A.* 52:27D–124g were enacted in 1981 in order to authorize the DCA to administer and enforce federal manufactured or mobile home safety and construction standards in accordance with the National Manufactured Housing Construction and Safety Standards Act of 1974 (42 *U.S.C.A.* § 5401 *et seq.*), L.1981, c. 494, § 1 *et seq.* Pursuant to this amendment, DCA was authorized to set standards regarding manufactured or mobile home construction or safety where a federal standard has not been established, *N.J.S.A.* 52:27D–124b; inspect factories, warehouses or establishments where homes are manufactured, stored or held for sale to ascertain whether the regulations have been met, *N.J. S.A.* 52:27D–124c; inspect books and records of manufacturers, distributors and dealers of manufactured homes to ascertain whether the regulations have been satisfied, *N.J.S.A.* 52:27D–124d; levy penalties for violation of the standards, *N.J.S.A.* 52:27D–124e; promulgate regulations for the implementation of the standards, *N.J.S.A.* 52:27D–124f; and conduct administrative hearings in which the DCA's administration or enforcement of the standards may be challenged, *N.J.S.A.* 52:27D–124g. When *N.J.S.A.* 52:27D–124g is viewed within the context of these statutory sections, it is plain that the entitlement to an administrative hearing thereunder is limited to parties who seek to challenge the DCA's actions regarding its enforcement of the safety and construction standards governing manufactured or

mobile homes. Consequently, this subsection does not apply to DCA's action supplanting a local agency for a specific project.[3]

Although we therefore affirm the DCA's orders assuming regulatory jurisdiction over the Aspen at Edison and Glen Edison projects, we have no occasion to consider the legal effect of any actions the local enforcing agency may have taken prior to the assumption of jurisdiction by DCA. We do not have a complete record regarding any orders Edison may have issued prior to June 9, 1988. Moreover, the owners of the two projects, the only ones with a direct interest in the effectiveness of any such orders, are not parties to this appeal.[4]

■ Finally, we reject Rainford's challenge to the order of August 30, 1988 requiring Edison to provide DCA with all certificates of occupancy it issues except those pertaining to one and two family dwellings. The part of *N.J.S.A.* 52:27D–124(k) which authorizes DCA "[t]o monitor the compliance of local enforcing agencies" provides clear authorization for such an order. *N.J.S.A.* 52:27D–124(k) does not suggest that DCA must make any kind of preliminary factual showing before undertaking such monitoring. And even if DCA were required to demonstrate some particular need for reviewing the certificates of occupancy being issued by Edison, the proceedings

---

[3]Our conclusion that *N.J.S.A.* 52:27D–124g does not apply to the kind of administrative agency action challenged in this appeal makes it unnecessary for us to decide whether appellants would qualify as "aggrieved parties" if this legislation were applicable.

[4]On June 17, 1988, DCA issued notices of violation and orders to terminate to the owners of both Aspen at Edison and Edison Glen, alleging that they had failed to provide the minimum number of approved independent exits from each floor of their condominium projects. The owner of Edison Glen requested an administrative hearing with respect to the notice but, according to the Attorney General, this hearing has not been held because the need for approved exits is currently being litigated in related proceedings before the Office of Administrative Law and in any event the owner has now substantially complied with DCA's requirements. DCA has withdrawn the notice of violation issued to the owner of Aspen at Edison upon receiving revised drawings indicating compliance with DCA's requirements.

against Rainford, and the ALJ's observations with respect to the denial of a temporary suspension of his licenses, would provide an ample foundation for the August 30, 1988 order.

Accordingly, the June 3, June 9, August 9, and August 30, 1988 orders of Commissioner of Community Affairs and the final judgment of the Chancery Division are all affirmed.