831 A.2d 110

DKM RESIDENTIAL PROPERTIES CORPORATION, PLAINTIFF–
APPELLANT, v. THE TOWNSHIP OF MONTGOMERY AND THE
CONSTRUCTION BOARD OF APPEALS OF THE TOWNSHIP
OF MONTGOMERY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 4, 2002—Decided September 15, 2003.

Before Judges WEFING, WECKER and FUENTES.

*Michael A. Lampert* argued the cause for appellant (*Saul Ewing,* attorneys; *Mr. Lampert,* of counsel; *Mr. Lampert* and *Michele A. Daitz,* on the brief).

*Trishka Waterbury* argued the cause for respondents (*Mason, Griffin & Pierson,* attorneys; *Ms. Waterbury,* on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

This appeal presents a question of first impression concerning the power of a municipal construction official to issue a notice of violation to a residential builder years after a certificate of occupancy was issued and title transferred to the new homeowner. Both plaintiff, DKM Residential Properties Corporation ("DKM"), and defendants, Township of Montgomery ("Montgomery") and the Montgomery Construction Board of Appeals ("the Board"), agree that the scope of the municipal officer's jurisdiction is solely a legal issue. Both parties agree that the Law Division judge did not decide that issue, except insofar as her decisions on cross-

motions for summary judgment constituted a de facto decision in favor of jurisdiction. Both parties now seek a ruling by this court rather than a remand to the Law Division. We accede to that request and now reverse.

Because the issue of jurisdiction is determinative, and because the Board's findings of fact were not challenged on the merits in this appeal, we do not review those findings. Our decision today does not reflect any view of the merits of pending or future claims against DKM by any homeowner or group.

I

This action arose when the municipal construction official issued a Notice of Violation and Order to Terminate ("NOV") to DKM, invoking his authority pursuant to the State Uniform Construction Code Act, *N.J.S.A.* 52:27D-119 to -141 ("the Act"), and the regulations promulgated thereunder by the Department of Community Affairs ("the DCA"), *N.J.A.C.* 5:23-1.1 to -12A.6 ("the regulations"). The regulations adopt the State Uniform Construction Code ("the UCC"), as mandated by *N.J.S.A.* 52:27D-123(section a). The Act empowers municipal construction officials "to administer and enforce the [UCC]." *N.J.S.A.* 52:27D-126(section a). Both parties also agree that compliance with the UCC is the main goal of the regulations.

The core of DKM's argument in the Law Division, and now before us, is that the municipal construction official lacks authority to issue an NOV to a builder/developer after its work on the property has been completed and a certificate of occupancy issued, and after the developer has transferred title to the property, because the developer no longer has control over the property and therefore has no power to correct the alleged violation. Rather, DKM contends that there is no legal basis for implying enforcement authority against the developer, and code compliance can be met by enforcement against the current property owner, as expressly authorized by the Act.

DKM further contends that if the Act and the regulations are construed to grant such authority to the construction official, those enactments violate both the United States and the New Jersey constitutions.[1] In light of our conclusion that the municipal construction official does not have the authority to issue an NOV to DKM, we need not address the constitutional challenge. We also need not address DKM's additional arguments: that the official is equitably estopped from issuing the NOV to DKM based on having previously issued certificates of occupancy; that the municipality illegally delegated its governmental function to the homeowners or their privately retained engineer; that the Board's action constituted an interference with existing contracts; and that the Board violated a stay order issued by the Law Division.

## II

These are the circumstances in which the issue of the jurisdiction of the construction official arose. Several homeowners in the Cherry Valley Country Club ("Cherry Valley") residential development in Montgomery Township found leaks in their homes and retained professional engineers who inspected the Exterior Insulation and Finish System ("EIFS") on their homes. EIFS is an exterior, synthetic, stucco-like finish, whose allegedly defective installation allowed water and moisture to enter the homes, causing damage. The EIFS had been applied, and the construction completed between 1995 and 1998. The dissatisfied homeowners brought their engineer's reports to the Montgomery construction official, who issued the first NOV to DKM on December 12, 2000. That NOV alleged that plaintiff improperly applied EIFS to nine

---

[1] We were informed by counsel for defendant that the only response she received to her request that the Attorney General seek intervention in this appeal was a letter dated November 26, 2002, from Senior Deputy Attorney General Daniel P. Reynolds to the Clerk of the Appellate Division, attaching a copy of the State's brief in another appeal pending at the time, *Cyktor v. Aspen Manor Condominium Ass'n*, A–002554–01. This court's decision on that appeal, now reported at 359 *N.J.Super.* 459, 820 A.2d 129 (App.Div.2003), which we discuss below, did not address the issue before us.

houses it had constructed and sold in the Cherry Valley develop-
ment, in violation of the UCC, specifically the provision requiring
that all exterior walls provide "a barrier against the weather and
insects to enable environmental control of the interior spaces."[2]
The construction official issued several additional NOVs to DKM
citing the same problem for a total of sixty-two buildings in the
development.

The record before us includes an NOV dated February 20, 2001,
specifying violations at fourteen sites, thirteen of which were one-
family homes owned by private parties, and one of which included
Cherry Valley's tennis and golf clubhouses, cabana pool building,
and a maintenance building, all owned by DKM. An attachment to
that NOV described the alleged violation: "The installation of the
exterior insulation and finish system [EIFS] was not done as per
the manufacturer's specifications as approved by BOCA Evalua-
tion Service Report # 92–14, Sto [the manufacturer] Specifications
A100, *N.J.A.C.* 5:23–2.21 and 1995 CABO code section 703.1." The
next NOV is dated March 6, 2001, and specifies violations at
fourteen private homes. The description of the alleged violations
was identical to the preceding NOV. The third NOV, dated April
5, specified nine private homes and alleged the same violation. On
July 16, 2001, a fourth NOV was issued, alleging the same
violation at sixteen additional private homes. We are therefore
aware of sixty-one pending citations respecting homes built in
Cherry Valley by DKM and sold to private parties, and one
citation to DKM for its own property.

The NOVs were never served upon any of the homeowners;
that is, the homeowners were neither cited for the alleged viola-

---

[2] The Uniform Construction Code incorporates sub-codes dealing with con-
struction, including building, plumbing, electrical, and fire protection sub-codes.
*N.J.A.C.* 5:23–3.14 to –3.22. As the Act reflects, the building sub-code largely
adopted the model code of the Building Officials and Code Administrators
International, Inc. ("BOCA" Code). *N.J.S.A.* 52:27D–122 and –122.1; *N.J.A.C.*
5:23–3.14. These sub-codes are not reprinted in the regulations; however, there
is no dispute that the sub-code provisions attached to the NOVs are those
adopted by the regulations.

tions nor threatened with revocation of the certificates of occupancy or penalties for failure to bring their properties into compliance with the UCC.

The procedural history leading up to the Law Division decision is complicated and largely irrelevant to the issue we now address. A few procedural facts will suffice to set the stage for our discussion. Promptly after the first NOV issued, DKM filed an appeal with the Board.[3] DKM also filed this action in lieu of prerogative writs, challenging the municipal construction official's authority to issue the NOV. As each of the several NOV's issued, DKM appealed those violation notices to the Board and amended its complaint to include them.[4] In the interim, the Board held an evidentiary hearing on the first NOV and concluded that the violations had been proven: the EIFS installations failed to meet the UCC. The Board ordered DKM to prepare a remediation plan and to obtain the homeowners' consent to the plan.

DKM submitted a remediation plan under protest. That plan included replacing the EIFS with a different synthetic stucco. Thereafter, the Board held brief additional hearings on two additional NOVs, rejected DKM's plan as submitted, required changes, and set forth penalties for non-compliance.

On cross-motions for summary judgment in the prerogative writs action, the judge denied DKM's motion and granted defendants' motion, effectively affirming the Board's order for DKM to remediate, on threat of penalties. DKM's application for a stay was denied by the Law Division, the Appellate Division, and the

---

[3] A municipal appointing authority may appoint a construction board of appeals to hear appeals from the construction official's and sub-code officials' decisions. *N.J.S.A.* 52:27D–126 and –127. Where no municipal construction board of appeals has been appointed, the county construction board of appeals hears such matters. *N.J.S.A.* 52:27D–127.

[4] DKM does not address the apparently undisputed fact that the second NOV included buildings in the development that were owned by DKM at the time. In fact, we are told that DKM received a reduction in its property tax assessment on account of the condition of the EFIS on those buildings.

Supreme Court. DKM then submitted a modified remediation plan, which was approved. The plan provided for replacement of the EIFS, with the homeowners permitted to select many of the details; repair of damage to the affected homes caused by defective material or installation; a mechanism for resolving disputes about the nature and extent of such damage; and elimination of previously imposed penalties, as DKM completed remediation on each property within the time allowed.[5]

The judge did not expressly decide the jurisdictional issue; however, by dismissing the complaint and leaving DKM's appeals for the Board to determine, a decision was made, albeit without explanation. Clearly the jurisdictional issue—whether the NOVs issued to DKM were ultra vires—is determinative. In the interest of judicial economy, we will address that issue rather than remand to the Law Division. *R.* 2:10–5.

III

DKM contends that neither the Act nor the regulations relied upon by Montgomery expressly or impliedly authorize the municipal construction official to cite the builder for alleged construction code violations years after transfer of title.

Montgomery claims that its construction official used fairly and necessarily implied powers to accomplish the goals of the Act, pursuant to the broad grant of power set forth at *N.J.S.A.* 52:27D–124. Montgomery contends that the DCA has long interpreted its power to include parties like DKM and relies in part upon the Certification of Gerald Grayce, Supervisor of Investigations in the DCA, which was submitted in support of defendant's

---

[5] We have not been informed of the status of remediation efforts to date. We were informed at oral argument that separate actions are pending against DKM by some or all of the homeowners.

motion for summary judgment. In that certification, Grayce stated:

The Department of Community Affairs has cited and continues to bring enforcement actions against builders for violations of the Uniform Construction Code, sometimes as many as twenty years after the builder conveyed all ownership interest in the property. In addition, ... the Commissioner ... has ruled that there is no statute of repose that applies to enforcement actions under the Uniform Construction Code.

We now know that the Commissioner's ruling has been reversed with respect to the statute of repose. *See Cyktor v. Aspen Manor Condominium Ass'n*, 359 *N.J.Super.* 459, 820 *A.*2d 129 (App.Div. 2003). The jurisdictional issue raised by this appeal was not raised by the builder in *Cyktor* and therefore not addressed. Even if the Grayce certification is sufficient evidence of a long-standing, consistent practice on the part of the DCA of issuing NOVs to a builder in circumstances like those of DKM, such a practice is not determinative of its validity. We recognize that the interpretation of statutes and regulations by an agency charged with their enforcement is entitled to substantial weight; nonetheless, statutory interpretation remains a judicial function. An appellate court clearly is not bound by the agency's view. *E.g.*, *Brock v. P.S.E. & G. Co.*, 149 *N.J.* 378, 383, 693 *A.*2d 894 (1997); *Bd. of Educ. of Tp. of Neptune v. Neptune Tp. Educ. Ass'n*, 144 *N.J.* 16, 31, 675 *A.*2d 611 (1996); *Mayflower Secs. Co. v. Bureau of Secs.*, 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973).

IV

The Commissioner of the DCA is granted "all the powers necessary or convenient" to effectuate the Act's purposes, including the authority to adopt rules relating to the Act's administration and enforcement. *N.J.S.A.* 52:27D–124 (section a). Pursuant to that authority, as well as explicit statutory direction, *N.J.S.A.* 52:27D–123 (section a), the Commissioner enacted regulations adopting a State Uniform Construction Code.

*N.J.S.A.* 52:27D–124j provides for power "[t]o enforce and administer" the Act, "and to prosecute or cause to be prosecuted violators ... in administrative hearings and in civil proceedings in

State and local courts." Section k establishes authority "[t]o monitor the compliance of local enforcing agencies with ... [their] responsibilities" under the Act.[6]

We also recognize that *N.J.S.A.* 52:27D–141 provides: "The powers enumerated in this act shall be interpreted broadly to effectuate the purposes thereof." Nevertheless, nothing in the language of *N.J.S.A.* 52:27D–124 suggests a grant of authority to pursue a builder years after its construction work has been completed, certificates of occupancy issued, and titles conveyed.

Local enforcement of the Code is entrusted to the municipality's construction official (and any appropriate sub-code officials) by *N.J.S.A.* 52:27D–126 (section a). The Act refers to these officials and their assistants collectively as the "enforcing agency." *N.J.S.A.* 52:27D–121. The enforcing agency is responsible for approving or denying construction permit applications; inspecting construction undertaken pursuant to a permit; issuing and enforcing orders to stop if violations occur during construction; and issuing certificates of occupancy.[7] *N.J.S.A.* 52:27D–131, –132 and –133. The construction official is the chief administrator for the enforcing agency. *N.J.S.A.* 52:27D–126 (section b). The DCA has general authority to enforce the Code and to supervise local

---

[6] *N.J.S.A.* 52:27D–124j and k were enacted by *L.* 1985, *c.* 21, § 1 to "remed[y] two defects in New Jersey's Uniform Construction Code Act that were brought to light at the hearing regarding the fire at Great Adventure." Senate Law, Public Safety and Defense Committee Statement to Senate No. 2114 (enacted as *L.* 1985, *c.* 21). The two identified defects were that "the act does not empower the department to take effective action when a municipal governing body fails to carry out its responsibilities to enforce the Uniform Construction Code, nor does it allow the department to take enforcement action to remedy hazards at a particular building." Neither section addresses the appropriate target of any compliance or enforcement proceeding.

[7] *N.J.S.A.* 52:27D–121 provides the following definition:

"Certificate of occupancy" means the certificate provided for in ... this act, indicating that the construction authorized by the construction permit has been completed in accordance with the construction permit, the State Uniform Construction Code and any ordinance implementing said code.

enforcing agencies. *Tp. of Edison v. Coleman,* 239 *N.J.Super.* 301, 304, 571 *A.*2d 312 (App.Div.1990) (citing *N.J.S.A.* 52:27D–124). The enforcing agency's duties are spelled out in detail in *N.J.A.C.* 5:23–4.5.

A significant provision of the Act states that "[n]o building or structure hereafter constructed shall be used or occupied in whole or in part" until the enforcing agency issues a certificate of occupancy. *N.J.S.A.* 52:27D–133. A certificate of occupancy "shall be issued by the enforcing agency when all of the work covered by a construction permit shall have been completed in accordance with the permit, the code, and other applicable laws and ordinances." *Ibid.* The certificate of occupancy "shall certify that the building or structure has been constructed in accordance with the provisions of the construction permit, the code, and other applicable laws and ordinances." *Ibid.*

*N.J.A.C.* 5:23–2.23(a)(1) provides that the enforcing agency "shall upon application by the owner issue a certificate of occupancy when all requirements of the regulations have been met." The application requires a statement by the person responsible for the construction "that to the best of his knowledge all work has been completed in accordance with the permit, the approved plans, and the regulations." *N.J.A.C.* 5:23–2.23(h)(4). Required provisions of every certificate of occupancy include: "that the completed project meets the conditions of the construction permit, the approved drawings including all amendments, and all prior approvals" and "that all necessary inspections have been completed and that the completed project meets the requirements of the regulations." *N.J.A.C.* 5:23–2.24(a)(1) and (3).

The regulations contain but few references to the construction official's authority after a certificate of occupancy has been issued. The enforcing agency "may revoke a certificate of occupancy whenever a condition of a certificate has been violated." *N.J.A.C.* 5:23–2.23(m). After the certificate of occupancy has been granted, the official's power is limited. "The construction official shall not enter upon such premises for purpose of inspection, unless upon

reasonable grounds to believe that a condition of the certificate of occupancy has been violated." *N.J.A.C.* 5:23–2.29(d).

## V

■ The issue before us in this appeal does not involve the scope of municipal power, but the scope of the enforcement power created by the Act and delegated to enforcement officials, including both DCA and municipal officers. In order to discern the intended scope of the power delegated to the municipal construction official in the absence of express authority over a developer such as DKM, we look first to the stated goals of the enabling legislation. "The intent and purpose" of the Act is set forth at *N.J.S.A.* 52:27D–120:

a. To encourage innovation and economy in construction and to provide requirements for construction and construction materials consistent with nationally recognized standards.

b. To formulate such requirements, to the extent practicable, in terms of performance objectives, so as to make adequate performance for the use intended as the test of acceptability.

c. To permit to the fullest extent feasible the use of modern technical methods, devices and improvements, including premanufactured systems, consistent with reasonable requirements for the health, safety, and welfare of occupants or users of buildings and structures.

d. To eliminate restrictive, obsolete, conflicting and unnecessary construction regulations that tend to unnecessarily increase construction costs or retard the use of new materials, products or methods of construction, or provide preferential treatment to types or classes of materials or products or methods of construction.

e. To insure adequate maintenance of buildings and structures throughout the State and to adequately protect the health, safety and welfare of the people.

f. To eliminate unnecessary duplication of effort and fees in the review of construction plans and the inspection of construction.

We next consider whether the implied power of enforcement against DKM, as asserted by defendant, furthers these goals to warrant the conclusion that enforcement against a party in DKM's circumstances would have been intended by the Legislature. We are satisfied it would not.

At first blush, it might appear that extending the enforcement power to DKM furthers the goals of *N.J.S.A.* 52:27D–120e "[t]o

insure adequate maintenance of buildings and structures through-
out the State and to adequately protect the health, safety and
welfare of the people." It is at least equally plain that subjecting
a party such as DKM to the NOV enforcement procedure, years
after completion of a real estate development, is likely to discour-
age developers from considering certain projects and technologies,
and thus would conflict with several other express goals set forth
in *N.J.S.A.* 52:27D–120, namely: encouraging "innovation and
economy in construction" (section a); making modern construction
"methods, devices and improvements" feasible "to the fullest
extent" (section c); and eliminating regulations that "unnecessari-
ly increase construction costs or retard" new means of construc-
tion (section d). Subjecting a developer to code enforcement
proceedings several years after its work is completed, certificates
of occupancy issued, and title transferred, will likely be reflected
in higher costs to new home buyers and a reluctance on the part of
a builder/developer to adopt innovative methods and materials.

Defendants allege that *N.J.A.C.* 5:23–2.1(c) and (d) and *N.J.A.C.*
5:23–2.30 provide express authority for the power to issue the
NOVs to DKM.[8] Defendants contend that the "plain meaning" of
the statute and the regulations supports enforcement authority
over DKM. We find no such plain meaning and no basis for
inferring the meaning defendants advocate. Defendants' authori-

---

[8] *N.J.A.C.* 5:23–2.1 provides, in pertinent part:

(c) Except as is otherwise specified, these regulations shall control all
matters concerning the construction, alteration, addition, repair, removal,
demolition, use, location and occupancy of all buildings and structures and
their service equipment as herein defined, and shall apply to existing or
proposed buildings and structures in the State of New Jersey.

(d) The regulations shall be construed to secure its expressed intent, which
is to insure public safety, health and welfare insofar as they are affected by
building construction, through structural strength, adequate egress facilities,
sanitary equipment, light and ventilation, and fire safety; and, in general, to
secure safety to life and property from all hazards incident to the design,
erection, repair, removal, demolition or use and occupancy of buildings,
structures or premises.

ty to issue an NOV to the appropriate party is plain; what is not plain is the authority to cite DKM.

Defendants cite *N.J.A.C.* 5:23–2.30 as authority for issuing these NOVs to DKM. *N.J.A.C.* 5:23–2.30(a) provides only that:

Whenever the construction official or the appropriate sub-code official shall determine that there exists a violation of the provisions of the regulations, or of a detailed statement or plan approved thereunder, or where there exists a violation of a permit or certificate issued under the regulations, the construction official shall issue a notice of violation [NOV] and orders [sic] to terminate directing the discontinuance of the illegal action or condition and the correction of the violation.

The most logical inference to be drawn from the quoted language, which does not identify or describe the intended object of the NOV, is that the notice must go to one with power to correct the alleged violation and bring the property into compliance with the construction code, meaning either an owner, or a builder or contractor whose inspections and certificate of occupancy have not yet been completed.

Defendants further rely upon *N.J.A.C.* 5:23–2.30(b)1 to support their position. That section provides, in pertinent part:

The notice and orders shall contain at least the following information:

1. The name and address of *the owner;* the address at which the violation occurred; the name and address of *the person to whom the order is directed, and if it be other than the owner, a copy shall be delivered to the owner or his agent stating that the owner bears joint responsibility for bringing about compliance with the person named* and that if a penalty is imposed, the enforcing agency will not issue a certificate of occupancy until such penalty has been paid; the permit number, a citation to the sections of the regulations violated; an order to terminate violations within a time specified in the order; the amount of penalty assessed, if any, and if cumulative, an explanation of the method of computation; and shall be signed by the appropriate subcode official and the construction official. [Emphasis added.]

Defendants would have us infer that the words "if it be other than the owner" establish the construction official's jurisdiction over DKM. We disagree, noting that the owners themselves were never served with these NOVs.

It is the combination of *N.J.A.C.* 5:23–2.30(a) and (b)1 that defendants rely upon as the source of the municipal construction official's authority to issue an NOV to DKM. Contrariwise, DKM

contends that nothing in the regulations explicitly or implicitly provides that a builder shall remain subject to the Act and the regulations years after selling the property involved. As DKM further contends, *N.J.A.C.* 5:23–2.31, which authorizes an order to comply and penalizes non-compliance, is inconsistent with the assertion of enforcement authority over the builder, who has no right to enter the property or make repairs or modifications without the owner's consent. The fact that some or all of the homeowners involved in this case may in fact consent to the builder's proposed remediation plan (submitted under protest) does not change the legal issue or our interpretation of the statute and the regulations.

Each party argues that our recent decision in *Cyktor,* 359 *N.J.Super.* at 459, 820 *A.*2d 129, supports its position. In that case, NOV's were issued to the builder more than ten years after completion and transfer of title. We held that the ten-year statute of repose, *N.J.S.A.* 2A:14–1.1, protected the builder from UCC enforcement proceedings more than ten years after completion of its work on the property. The question of the municipal official's authority and jurisdiction over the non-owner builder was not raised and therefore not addressed in *Cyktor;* the only issue was the applicability of the ten-year statute of repose to an action other than one for damages. We are unwilling to conclude from that decision, as Montgomery would have us do, that the builder *is* subject to a municipal NOV *until* ten years has passed.

It seems plain to us that the means of enforcing the construction code provided by the Legislature and authorized by the Act, after completion of construction and passage of title, is to cite *the owner* of the property and hold *the owner* directly responsible for compliance. The owner in turn has available remedies against a builder who has either breached his express contract with the owner or violated a standard of care, a standard which may be defined by the construction code itself. *Cf. Costantino v. Ventriglia,* 324 *N.J.Super.* 437, 441–43, 735 *A.*2d 1180 (App.Div.1999) (OSHA regulations are admissible to establish a standard of care

in a common law negligence action), *certif. denied*, 163 *N.J.* 10, 746 *A.*2d 456 (2000).

We recognize that a significant number of property owners apparently have similar complaints about the EIFS installation. In fact, many have pending actions against DKM and others. There are means for those property owners to pursue an efficient resolution of their claims without relying on code enforcement procedures against DKM. The Rules of Court suggest several means that are potentially available to avoid duplication and unnecessary expense for persons seeking redress on similar claims, including joinder, *R.* 4:27, and consolidation, *R.* 4:28. Rule 4:32 provides for class action suits. A representative suit brought by the property owners' association also may be available. *See* Pressler, *Current N.J. Court Rules*, Comment 3 on *R.* 4:32 (2003). Each of these provides a potential alternative for the homeowners to seek a remedy against DKM (or any other responsible party). Thus the homeowners are not without a remedy for any fault of DKM, and there is no reason to believe that the purposes and goals of the Act, including protection of the public, will not be equally or better served by one of these approaches.

Our point in emphasizing the several means by which similar homeowner claims can be pursued is not that the existence of private remedies limits the code enforcement authority expressly delegated to state or municipal officials. Rather, we note the availability of such remedies as a substantial factor that counters defendant's contention that the implied enforcement powers exercised in this case are essential in order to protect the public.

We are told that there are, in fact, pending proceedings against DKM, brought by the homeowners under The New Home Warranty and Builders' Registration Act, *N.J.S.A.* 46:3B–1 to –20, as well as civil suits against DKM, the manufacturer and the installer of EIFS, and even the township.[9] While the warranty provided

---

[9] That Act requires a builder of new homes to participate in a warranty program by contributing to a security fund administered by the DCA. The

by that Act does not "affect other rights and remedies available to the owner," once initiated, proceeding under the warranty bars other remedies. *N.J.S.A.* 46:3B–9. To uphold the municipal construction official's enforcement jurisdiction over the developer appears to allow the homeowner to accomplish indirectly what it cannot do under the election of remedies provision of the New Home Warranty Act.

We see potential misuse of the regulatory enforcement procedure if we hold that the enforcement jurisdiction of the construction code official extends to a developer under these circumstances. The homeowners have utilized the municipal construction official and the Construction Board of Appeals to make findings of fact, which presumably will be cited in private proceedings for their collateral estoppel effect. By utilizing the public enforcement proceedings to advance their cause, affected homeowners can impose the costs of pursuing private claims upon unaffected taxpayers in their municipality. Their complaints against the builder, no matter how meritorious, should be addressed through remedies available to them under powers legitimately derived and financed by private means— either through their homeowners' warranty or in litigation under the common law of negligence, contract, or product liability.

Reversed and remanded for entry of orders vacating summary judgment in favor of defendants, reinstating DKM's amended complaint, and granting summary judgment in favor of DKM

---

warranty provided to a new homeowner covers construction defects of varying degrees, some for one year after completion, some for two, and for "major construction defects" as defined by *N.J.S.A.* 46:3B–2g, for ten years. *See generally Lakhani v. Bureau of Homeowner's Prot.*, 356 *N.J.Super.* 132, 811 *A.2d* 918 (App.Div.2002). The statute also provides for "alternate new home warranty security programs," subject to the prior approval of the Commissioner of the Department. *N.J.S.A.* 46:3B–8. The record before us does not include the precise nature of any pending actions or proceedings under the new home warranties or otherwise.

declaring the NOVs issued to it—with the exception of the notice concerning DKM's own property to—be null and void.

WEFING, J.A.D., concurring.

I concur in the views expressed by Judge Wecker in her thorough opinion. I write separately simply to note the limited context in which this dispute arises.

We are not confronted with any question of certificates of occupancy having been issued as the result of any improper solicitations on the part of DKM. Nor are we presented with the efforts of a municipality to rehabilitate its distressed housing stock which deteriorated and was abandoned as a result of shoddy construction. Such instances might present different policy considerations than those which we confront in this case.

The understandable desire of a municipality to afford prompt relief to its residents, taxpayers and voters cannot serve as a predicate for jurisdiction in a dispute such as this, which is essentially private in nature.