820 A.2d 129 (2003)
359 N.J. Super. 459
Louis CYKTOR, Jr., Louis Cyktor III, Irving Sorrentini, Robert G. Paulus, Wick Builders, Inc., and Canaco, Inc., Petitioners-Appellants, and
Anne Cyktor, Kathleen Paulus, and Daryl Sorrentini, Petitioners,
v.
ASPEN MANOR CONDOMINIUM ASSOCIATION and Bureau of Regulatory Affairs, Respondents-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 2003.
Decided April 17, 2003.
*131 Cole, Schotz, Meisel, Forman & Leonard, attorneys for appellants (Thomas J. LaConte, Hackensack, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondents (Patrick DeAlmeida, Deputy Attorney General, of counsel; Patricia E. Stern, Deputy Attorney General, on the brief).
Before Judges BRAITHWAITE, LINTNER and PARKER.
*130 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
The central issue on appeal is whether the ten-year statute of repose, N.J.S.A. 2A:14-1.1, protecting "any person performing or furnishing the design, planning, supervision of construction or construction of [an] improvement to real property," bars respondent Bureau of Regulatory Affairs, Department of Community Affairs ("DCA"), from commencing an enforcement action against appellants who constructed a condominium development more than ten years prior to the DCA action. The acting Commissioner of DCA held that the statute of repose did not bar the enforcement action because the statute applies only to actions to recover damages.
On appeal, petitioners assert that DCA's enforcement action is barred by the statute of repose and that DCA's enforcement action against the individual petitioners named as agents of the condominium association should be dismissed. We agree with petitioners that the DCA action is *132 barred by the statute of repose and now reverse.

I
The condominium development is known as "Aspen Manor Condominium," located in Woodbridge. Aspen Manor, Inc., a New Jersey Corporation, registered a Public Offering Statement on May 8, 1981. It received its first building permit on November 13, 1980, and was issued permits for its last group of buildings in the complex on July 1, 1983. Certificates of occupancy were issued for the individual units from July 1981 to May 1985. At some point, Aspen Manor, Inc., changed its name to Wick Builders, Inc. ("Wick").
Wick, the developers/sponsors of the condominium complex and the non-sponsor/unit owners negotiated in 1986 for the transfer of control of the Condominium Association (the "Association") from Wick to the unit owners. In December 1986 Wick transferred control of the Association to the unit owners and on December 16, 1986, the Association, controlled by the unit owners, executed a release that relieved Wick and its principals, petitioners Louis Cyktor, Jr., Louis Cyktor, III, Robert G. Paulus, and Irving Sorrentini, of future liability in connection with Aspen Condominium in exchange for a payment of $39,192.
The release relieved Wick of the following:
Any and all claims or rights, relating to or arising out of any liability or any obligation of Wick Builders, Inc. to make working capital contributions or to fund capital reserves or otherwise contribute to operate [sic] deficits of Aspen Manor Condominium Association; and any and all claims which I may have relating to or arising out of the construction, completion and repair of buildings, improvements, common elements and facilities and limited common elements and facilities at the Aspen Manor Condominium.
The Association assumed ownership and control of the "common elements of the project."
The DCA first cited the Association for building code violations in 1988 when it sent notices of violation and orders to terminate to the Association and Wick for a failure to equip the buildings with an appropriate number of independent exits on every floor. The Association and Wick challenged the DCA action before the Office of Administrative Law ("OAL"). Thereafter, on May 1, 1992, the Association commenced an action in the Law Division against Wick and the principals listed above plus Daryl Sorrentini for the costs of repairs of twenty-five buildings in the event that the Association lost in the proceedings brought by the DCA.
Both proceedings were settled. On October 3, 1996, the Administrative Law Judge ("ALJ") approved a consent order that Wick would pay the Association $42,000 in consideration for release from any and all claims concerning the particular violations cited by the DCA in the administrative proceedings. On May 20, 1996, the Association and Wick filed a stipulation of dismissal with prejudice in the Law Division action, stating that "the parties hereby mutually dismiss all claims raised by them against each other in this litigation with prejudice and without costs to any of the parties."
In March of 1997, almost twelve years after the final certificate of occupancy was issued, the DCA commenced this proceeding by sending notices of violation and orders to terminate. This time, however, the DCA asserted that "[t]he exit enclosure walls do not extend to the underside of the roof deck, creating an open attic, which is a violation."
*133 In November 1997, the Association moved to set aside the Law Division settlement with Wick and reopen the dismissed lawsuit and amend the complaint to include the new claim involving the most recent violations cited by the DCA. Wick defended on the grounds that the Association was prohibited by the statute of repose, and that the Association was attempting to circumvent the entire controversy doctrine. On January 9, 1998, the Law Division judge denied the Association's motion. She stated that the Association's claim was not barred by the entire controversy doctrine, but it was barred by the statute of repose. She stated that the statute of repose precluded the Association from any remedy against Wick and that if it were permitted to reopen the old case and append a new claim the statute of repose would be rendered ineffective. The Association filed an appeal, but never pursued it. As such, it was dismissed on November 19, 1998.
The DCA identified Wick as the Association's agent. Then in an amended notice of violation issued on September 19, 1997, the DCA identified Robert Paulus as the Association's agent. On February 11, 1998, the DCA sent another series of amended notices of violation to the Association, this time designating petitioners Kathleen Paulus, Robert Paulus, and Canaco, Inc., c/o Robert Paulus, and Louis Cyktor, III, as agents of the Association. Counsel for Wick promptly sent a letter informing the DCA that Wick had transferred control of the Association to the unit owners in 1986.
The DCA then transferred the matter to the OAL, naming as petitioners, in the contested case, Wick, Aspen Manor, Inc. a/k/a Canaco, Inc., Louis Cyktor, Jr., Robert G. Paulus, Louis Cyktor, III, Irving Sorrentini, Kathleen Paulus, and Anne Cyktor.
On November 10, 1998, Wick moved to dismiss the DCA action on the grounds that the notice of violation was barred by the statute of repose and that the DCA was precluded from pursuing Wick's principals for the violations. The DCA argued that the statute of repose did not preclude a governmental agency from bringing an enforcement action. Following oral argument on December 10, 1998, the ALJ issued an initial decision on April 7, 1999, granting Wick's motion, holding that the statute of repose prohibited the DCA's enforcement action.
In his written decision, the ALJ concluded that the statute of repose applied because Wick "contributed to the design, planning, supervision or construction" of Aspen Manor Condominiums, its substandard construction created a hazardous situation, and more than ten years had passed since the completion of construction. Further, he noted that the DCA is not exempt from the statute because the Legislature intended that the statute "grants immunity against all actions ... including the ... enforcement action by the DCA in the present matter." The ALJ did not address whether the DCA was precluded from asserting the action against the individual petitioners and their wives.
On July 9, 1999, the then Commissioner of the DCA issued a final agency determination rejecting the ALJ's recommendation. Specifically, the Commissioner accepted the "Statement of the Case and Procedural History" and the "Analysis and Conclusions of Law," but she rejected the conclusion that the statute of repose barred the DCA's enforcement action because a strict construction of the plain language of N.J.S.A. 2A:14-1.1 only prohibits actions for damages upon the expiration of the ten years.
The Commissioner said in part: "the explicit wording of the statute does not *134 support the ALJ's holding.... [It] states that no action `whether in contract, in tort, or otherwise to recover damages' as no action `for contribution or indemnity for damages' may be instituted more than ten years" after substantial completion of the real property. She continued, "[h]owever, this action is not an action `for damages.' Rather, this action is an enforcement action taken under the authority of the [Uniform Construction Code], which has no statute of limitations." She took the position that the statute of repose is clear and unequivocal in limiting its applicability to actions for damages. Although she agreed that the courts have traditionally construed the statute liberally to conform to its purpose of preventing interminable exposure to liability for the players in the construction industry, she adopted a literal reading of the statute that would provide protection only against actions for damages.
Additionally, she justified her position under the authority of N.J.S.A. 52:27D-124, a section of the Uniform Construction Code ("UCC"), which reads in pertinent part:
The commissioner shall have all the powers necessary or convenient to effectuate the purposes of this act, including, but not limited to, the following powers in addition to all others granted by this act:....
j. To enforce and administer the provisions of the "State Uniform Construction Code Act," ... and the code promulgated thereunder, and to prosecute or cause to be prosecuted violators of the provisions of that act or the code promulgated thereunder in administrative hearings and in civil proceedings in State and local courts.
The Commissioner further stated that:
Clearly, therefore, actions such as this one which are taken under the authority of N.J.S.A. 52:27D-124(j) are not actions "for damages", but rather actions to enforce provisions of the Uniform Construction Code, provisions which are essential to public health, safety and welfare. N.J.S.A. 52:27D-122(b). If the Statute of Repose were applicable to enforcement actions under the UCC, it would inhibit the mandate of this Department to protect the public health, safety and welfare in matters involving building and construction.... Finally, I wish to emphasize that because the UCC constitutes remedial legislation concerning health, safety and welfare and because the UCC contains no statute of limitations, I reject the ... conclusion that the legislative history of the Statute of Repose can be read to contradict the plain meaning of the language of the Statute.
Wick appealed the "Final Decision" on July 27, 1999. The decision, however, was not final given that the Commissioner remanded the case for further proceedings and that to proceed on the appeal petitioners would have to file a motion for leave to appeal because the final decision was interlocutory. Wick did not do so, and the appeal was dismissed.
The case was returned to the ALJ, who rendered a second initial decision on October 22, 2001, consistent with the Commissioner's earlier final decision. Contained in the ALJ's second initial decision were the following stipulations by the parties:
1. The parties agree and stipulate to the Statement of the Case and Procedural History set forth on pages 2 to 8 and the Analysis and Conclusions of Law set forth on pages 8 through 18 of the Initial Decision of the [ALJ] dated April 7, 1999 ... and adopted by the Commissioner... in the Final Decision dated July 9, 1999.
*135 2. Aspen Manor Condominium was built by Aspen Manor, Inc. d/b/a/ Wick Builders.
3. Louis Cyktor, Jr., Louis Cyktor III, Robert [G.] Paulus and Irving Sorrentini were the officers of Aspen Manor, Inc.
4. Aspen Manor, Inc. changed its name to Wick Builders.
5. Aspen Manor Condominium Association, Inc. was incorporated ... for the purpose of maintaining, operating and managing ... Aspen Manor Condominium.
6. Louis Cyktor, Jr., Robert G. Paulus, Louis Cyktor, III, Irving Sorrentini and Daryl Sorrentini were the incorporators of Aspen Manor Condominium Association, Inc....
13. The respondent ... has no reason to believe that the buildings were not construed in accordance with the approved plans....
16. In these proceedings, the petitioners do not contest the findings of the respondent ... that the subject violation exists.
17. The respondent ... dismisses with prejudice the Notices of Violation and Order to Abate issued to Anne Cyktor, Kathleen Paulus and Daryl Sorrentini.
On December 4, 2001, the Acting Commissioner of the DCA, reaffirmed the earlier final decision issued by the former Commissioner. Additionally, the Acting Commissioner dismissed the case against Amy Cyktor, Kathleen Paulus, and Daryl Sorrentini pursuant to the stipulations of fact set forth in the ALJ's second "Initial Decision." This appeal followed.

II
An appellate court will not reverse the ultimate determination of an agency unless the court concludes that it was "arbitrary, capricious or unreasonable, or that it violated legislative policies" expressed or implied in the act governing the agency. Campbell v. Dep't of Civil Servs., 39 N.J. 556, 562, 189 A.2d 712 (1963). An appellate court respects the agency's expertise but, ultimately, interpretation of statutes is a judicial, not administrative, function and the court is in no way bound by the agency's interpretation. Mayflower Secs. Co. v. Bureau of Secs., 64 N.J. 85, 93, 312 A.2d 497 (1973).
The issue before this court is strictly a question of whether N.J.S.A. 2A:14-1.1, a statute of repose, bars an enforcement action brought by the DCA, against parties like petitioners, more than ten years after the completion of the construction of a real estate project.
The statute of repose reads in pertinent part as follows:
a. No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for any injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall serve as a *136 bar to all such actions, both governmental and private, but shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
b. This section shall not bar an action by a governmental unit:
(1) on a written warranty, guaranty or other contract that expressly provides for a longer effective period;
(2) based on willful misconduct, gross negligence or fraudulent concealment in connection with performing or furnishing the design, planning, supervision or construction of an improvement to real property;
(3) under any environmental remediation law or pursuant to any contract entered into by a governmental unit in carrying out its responsibilities under any environmental remediation law; or
(4) Pursuant to any contract for application, enclosure, removal or encapsulation of asbestos.
c. As used in this section:....
"Governmental" means the State, its political subdivisions, any office, department, division, bureau, board, commission or public authority or public agency of the State or one of its political subdivisions, including but not limited to, a county or a municipality and any board, commission, committee, authority or agency which is not a State board, commission, committee, authority or agency.

[N.J.S.A. 2A:14-1.1.]
Specifically the issue is whether this statute applies only to actions for damages, and thereby permits the DCA to bring an enforcement action against petitioners.
Because this case requires us to engage in statutory construction, our "overriding goal must be to determine the Legislature's intent." State, Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 627, 667 A.2d 684 (1995) (citing Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995)). The first step in determining the Legislature's intent is to look at the plain language of the statute. State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982); see also Merin v. Maglaki, 126 N.J. 430, 434-35, 599 A.2d 1256 (1992) (holding that statute's "language should be given its ordinary meaning, absent a legislative intent to the contrary"). As a general rule, when the language of a statute is clear on its face, "`the sole function of the courts is to enforce it according to its terms.'" Sheeran v. Nationwide Mut. Ins. Co. 80 N.J. 548, 556, 404 A.2d 625 (1979) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917)). Nevertheless, we also have stressed that "where a literal interpretation would create, a manifestly absurd result, contrary to public policy, the spirit of the law should control." Turner v. First Union Nat'l Bank, 162 N.J. 75, 84, 740 A.2d 1081 (1999) (citing Watt v. Mayor of Franklin, 21 N.J. 274, 278, 121 A.2d 499 (1956)). Thus, when a "`literal interpretation of individual statutory terms or provisions'" would lead to results "`inconsistent with the overall *137 purpose of the statute,'" that interpretation should be rejected. Cornblatt v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998) (quoting Young, supra, 141 N.J. at 25, 660 A.2d 1153).
[Hubbard v. Reed, 168 N.J. 387, 392-93, 774 A.2d 495 (2001).]
The "chief consideration underlying" a statute of repose is the "fairness to a defendant." Rosenberg v. Town of North Bergen, 61 N.J. 190, 201, 293 A.2d 662 (1972).
There comes a time when he [the defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when "evidence has been lost, memories have faded, and witnesses have disappeared." [Developments in the Law: Statutes of Limitations, 63 Harv. L.Rev. 1177, 1185 (1950).]

[Ibid.]
In Rosenberg, our Supreme Court concluded that N.J.S.A. 2A:14-1.1 was enacted to limit the "potential liability to which architects and building contractors, among others," were increasingly subject. Id. at 194, 293 A.2d 662. "The function of the statute is thus rather to define substantive rights than to alter or modify a remedy." Id. at 199, 293 A.2d 662. Thus, the substantive right created by the statute is the right not to have to defend ancient claims or obligations.
The Commissioner's literal reading of the statute of repose leaves petitioners and other similarly situated persons subject to DCA enforcement actions for life. It is universally understood that the purpose behind the statute is to "provide a measure of repose and prevent `liability for life' against contractors and architects." Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 117, 675 A.2d 1077 (1996). Although the primary concern of the statute was to prevent contractors and architects from liability for damages for life, we cannot conclude that the Legislature did not intend to bar a DCA enforcement action against persons such as petitioners.
N.J.S.A. 2A:14-1.1 was amended in 1997 to clarify that the statute applied to government actions. Prior to the amendment, two cases from this court applied the common-law doctrine of nullum tepus, meaning that the time limitation did not run against the state or its agencies. See State v. Cruz Constr. Co., 279 N.J.Super. 241, 652 A.2d 741 (App.Div.1995), and Rutgers, State Univ. of New Jersey v. Grad P'ship, 269 N.J.Super. 142, 634 A.2d 1053 (App.Div.1993), certif. denied, 136 N.J. 28, 641 A.2d 1039 (1994). These decisions prompted the Legislature to amend N.J.S.A. 2A:14-1.1 to clarify that the statute was intended to apply to claims by both private citizens and governmental agencies.
The amendment also set forth four exceptions for "an action by a governmental unit." N.J.S.A. 2A:14-1.1b. Pertinent, in our view, is the exception that the statute does not bar a governmental agency from bringing an action "under any environmental remediation law or pursuant to any contract entered into by a governmental unit to carry out its responsibilities under any environmental remediation law." N.J.S.A. 2A:14-1.1b(3). "`Environmental remediation law' means Chapter 10B of Title 58 of the revised statutes (C58:10B-1 et seq.) and any regulations adopted pursuant thereto." N.J.S.A. 2A:14-1.1c. We deem this amendment relevant to our interpretation of the statute because some of the actions contemplated under the environmental remediation provisions are enforcement proceedings. See N.J.S.A. 58:10B-13.1 and N.J.A.C. 7:26C-10.1 to -10.4. The other exceptions contained in *138 the 1997 amendment that do not bar government actions are those:
(1) on a written warranty, guaranty or other contract that expressly provides for a longer effective period;
(2) based on willful misconduct, gross negligence or fraudulent concealment in connection with performing or furnishing the design, planning, supervision or construction of an improvement to real property;
....
(4) pursuant to any contract for application, enclosure, removal or encapsulation of asbestos.
[N.J.S.A. 2A:14-1.1b.]
Given the amendment's purpose to clarify that the statute of repose applied to governmental actions and the exceptions to the time limitation with respect to those actions, we are satisfied that the DCA enforcement action is barred by the statute of repose. A legislative exception "is an affirmation of the application of the statute to all other cases not excepted." New Jersey State Bd. of Optometrists v. S.S. Kresge Co., 113 N.J.L. 287, 295, 174 A. 353, modified by, 115 N.J.L. 495, 181 A. 152 (1935). A "general rule of [statutory] construction [is] that enumerated exceptions in a statute indicate a legislative intent that the statute be applied to all cases not specifically excepted." State v. Reed, 34 N.J. 554, 558, 170 A.2d 419 (1961). Moreover, "[u]nder the principle of expressio unius est exclusio alterius (the expression of one is the exclusion of others), affirmative expression ordinarily implies the negation of any other alternative." Borough of Fort Lee v. Director, Div. of Taxation, 14 N.J. Tax 126, 132 (1994) (citations omitted). Here, had the Legislature intended to exempt DCA enforcement actions, it could have included such claims in the 1997 amendment.
The legislative history of the amendments also informs our judgment that the statute applies to the DCA's claim. The Assembly Transportation and Communications Committee noted as follows in 1996:
As amended by the committee, this bill would amend section 1 of P.L.1967, c. 59 (C.2A:14-1.1) to clarify that the provisions of that section of law are applicable to all actions, including those brought by State and local public agencies. That section provides that actions for damages for design deficiency or defective improvements may not be brought more than 10 years after the performance or furnishing of such services and construction. The sponsors' intention is to clarify that the original and continuing intent of the Legislature that this statute be applied equally to claims by both private citizens and public agencies in all such actions against contractors, subcontractors, architects, sureties and engineers, among others.
The committee adopted amendments to clarify that the provisions of the bill apply to all State and local public agencies and to actions arising out of or relating to all completed, pending and future improvements.
[Assembly Transportation and Communications Committee, Statement to A. 2188 (September 16, 1996).]
In March 1997, the Senate committee observed:
This bill would amend section I of P.L.1967, c. 59 (C.2A: 14-1.1), concerning certain civil actions for damages, to clarify that the provisions of that section of law are applicable to all actions, including those brought by State and local public agencies. That section provides that actions for damages for design deficiency or defective improvements may not be brought more than 10 years after the performance or furnishing of such *139 services and construction. The sponsors' intention is to clarify that the original and continuing intent of the Legislature is that this statute be applied equally to claims by both private citizens and public agencies in all such actions against contractors, subcontractors, architects, sureties and engineers, among others. The provisions of the bill are to apply to actions arising out of or relating to all completed, pending and future improvements.
[Senate Transportation Committee, Statement to A. 2188 (March 3, 1997).]
We acknowledge that these comments can be read to support that only governmental actions for damages were the intent of the Legislature in the amendment. However, the comments also provide that the statute applies to "all such actions against" those persons enumerated in the statute. It also says that it applies to "actions arising out of or relating to all completed, pending and future improvements" without specifying actions for damages. (emphasis added).
Our courts have interpreted the statute of repose broadly to advance its purpose. O'Connor v. Altus, 67 N.J. 106, 118, 335 A.2d 545 (1975). Further, a statute of repose by definition is distinguishable from a statute of limitations because it manifests the doctrine of "damnum absque injuria " ("a wrong for which the law affords no redress") conceptually translated to mean that upon the expiration of the statutory period, a cause of action literally ceases to exist no matter when the harm arose. Rosenberg, supra, 61 N.J. at 199, 293 A.2d 662. As a practical matter, a literal reading of the statute, as urged by the DCA, leads to an anomaly that we believe the Legislature did not intend.
As noted earlier, in 1988 DCA cited the Association for building code violations because of a failure to provide the buildings with an appropriate number of independent exits on every floor. This was an administrative enforcement proceeding that was before the OAL. While that matter was pending, the Association in turn commenced a Law Division action against Wick for damages representing the cost of repairs to the building in the event the Association was required to expend funds to comply with a successful enforcement by the DCA. The enforcement proceeding ended when Wick and the Association settled the claim and the Law Division action for damages was then dismissed.
Here, again, the DCA cited the Association for building code violations, but this time the Association is precluded by the statute of repose from seeking indemnity or contribution from Wick. As such, the DCA cited Wick and its principals directly as the agents of the Association. Therefore, the DCA's enforcement proceeding against petitioners is tantamount to a damage suit by the Association to recover any funds it would expend to mitigate the claim brought by the DCA. Given that "the central legislative concern was to limit the indefinite duration of liability for negligent work relating to realty improvements which are discovered to be defective many years later," we cannot conclude that the statute of repose excludes from its purview the DCA's current enforcement action. E.A. Williams, Inc. v. Russo Dev. Corp., 82 N.J. 160, 167, 411 A.2d 697. In our view, it defies logic to prohibit a suit for damages by the Association, but allow the DCA to commence an enforcement action that is tantamount to the same claim, but is labeled differently. Cf. Salesian Soc'y v. Formigli Corp., 124 N.J.Super. 270, 271, 306 A.2d 466 (App.Div.1973). Such a result would expose petitioners to interminable liability.
We disagree with the Commissioner's position that to bar enforcement actions by the DCA against contractors after ten *140 years will unreasonably restrict the DCA from ensuring the public's safety, health and welfare through the enforcement of building codes and regulations. The statute of repose specifically provides that the bar "shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought." N.J.S.A. 2A:14-1.1. As our Supreme Court stated: "This interpretation of the statute does not leave these [parties], or indeed any [parties] affected by N.J.S.A. 2A:14-1.1, without any remedy. Their rights remain effective against defendants who might be looked upon as primarythose who own, lease, occupy or control the premises." O'Connor v. Altus, supra, 67 N.J. at 123, 335 A.2d 545. The DCA is required at this time to bring the enforcement action against the Association alone, the party best suited to address the claim.
In our view, DCA should not be permitted to circumvent the statute because the relief it seeks is equitable. To side with the DCA would expose petitioners and their kind to potentially lifelong liability. The effect would be to obligate contractors to warranty their products for life. A distant subsequent owner could simply report a deficiency to the DCA who in turn would require the contractor to remedy it, when that subsequent owner may have been on notice of the deficiency and factored into the purchase price the costs of repair. We conclude that the literal interpretation urged by the Commissioner leads to a result that is inconsistent with the overall purpose of the statute of repose, to prevent liability for life against contractors and architects. Hubbard v. Reed, supra, 168 N.J. at 392-93, 774 A.2d 495.
Further, we are satisfied that there is no patent repugnance or inconsistency between the statute of repose and the UCC, N.J.S.A. 52:27D-119 to -141, so as to conclude that the UCC prevails over the statute of repose. See Pitney Bowes, Inc. v. Baker Indus., Inc., 277 N.J.Super. 484, 649 A.2d 1325 (App.Div.1994)
In Pitney Bowes, the third-party plaintiffs sought contribution from the designers and installers of underground oil storage tanks for costs of cleanup of groundwater and soil contamination pursuant to the Spill Compensation and Control Act. See N.J.S.A. 58:10-23.11f. The Law Division dismissed the third-party complaint because it found that it was barred by the statute of repose. We reversed, holding "that the later enacted provisions of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, take precedence and hence that parties otherwise entitled to the benefit of the ten-year repose may not rely thereon to defeat a Spill Act contribution claim." Id. at 485, 649 A.2d 1325.
N.J.S.A. 58:10-23.11f provides a private right of contribution against parties responsible for contaminating discharge. Id. at 486, 649 A.2d 1325. The defendant in Pitney denied its obligation to contribute because it claimed immunity from suit pursuant to N.J.S.A. 2A:14-1.1, arguing that the action was brought more than ten years after the defendant completed installation of the tanks. Ibid. On appeal, this court had to decide how to treat the conflicting statutes. Ultimately, we were persuaded that "the legislative scheme and purpose in enacting the Spill Act's contribution provisions would be significantly and unjustifiably compromised if the statute of repose were read as exempting from liability a class of persons patently intended to be included by N.J.S.A. 58:10-23.11f." *141 Id. at 487, 649 A.2d 1325. The purpose behind the Act was to provide a right of contribution to "accomplish a fair and equitable ... sharing of the remediation burden among all responsible parties." Ibid.
The court explained that "although `there generally exists a strong presumption against any implied negation of statutory enactments, this presumption may be overcome where there is a clear showing that two legislative measures are patently repugnant or inconsistent.'" Id. at 489, 649 A.2d 1325 (quoting City of Camden v. Byrne, 82 N.J. 133, 154, 411 A.2d 462 (1980)). If the Spill Act provisions did not prevail, "[v]iolence would otherwise be done to its plan and purpose." Ibid. "The exclusion from either direct or contribution liability of such culpable dischargers on the basis of the statute of repose would therefore not only impair the statutory scheme of the Spill Act but, in substantial measure, would render its contribution provisions meaningless." Id. at 490, 649 A.2d 1325.
The purpose of the Uniform Construction Code is:
a. To encourage innovation and economy in construction and to provide requirements for construction and construction materials consistent with nationally recognized standards.
b. To formulate such requirements, to the extent practicable, in terms of performance objectives, so as to make adequate performance for the use intended as the test of acceptability.
c. To permit to the fullest extent feasible the use of modern technical methods, devices and improvements, including premanufactured systems, consistent with reasonable requirements for the health, safety, and welfare of occupants or users of buildings and structures.
d. To eliminate restrictive, obsolete, conflicting and unnecessary construction regulations that tend to unnecessarily increase construction costs or retard the use of new materials, products or methods of construction, or provide preferential treatment to types or classes of materials or products or methods of construction.
e. To insure adequate maintenance of buildings and structures throughout the State and to adequately protect the health, safety and welfare of the people.
f. To eliminate unnecessary duplication of effort and fees in the review of construction plans and the inspection of construction.

[N.J.S.A. 52:27D-120.]
There is conflict between the UCC and the statute of repose in an enforcement proceeding; however, the two statutes are not `patently repugnant or inconsistent.' In fact, to undermine the statute of repose would be contrary to the purposes of the UCC in that expanding a contractor's exposure to liability would likely inhibit some of the purposes of the UCC, such as encouragement of innovation and economy in construction.
We, therefore, conclude that the DCA enforcement action against petitioners is barred by the statute of repose. We reverse the decision of the DCA.

III
Because we conclude that the DCA enforcement action is barred by the statute of repose, the second issue raised by petitioners is moot. We decline to address the claim.

*142 IV
The final decision of the DCA is reversed.