865 A.2d 649

DKM RESIDENTIAL PROPERTIES CORP., PLAINTIFF, v. THE TOWNSHIP OF MONTGOMERY AND THE CONSTRUCTION BOARD OF APPEALS OF THE TOWNSHIP OF MONTGOMERY, DEFENDANTS–APPELLANTS.

Argued October 13, 2004—Decided January 24, 2005.

*Trishka Waterbury* argued the cause for appellants (*Mason Griffin & Pierson,* attorneys; *Ms. Waterbury* and *Kristina P. Hadinger,* of counsel).

*William John Kearns, Jr.,* argued the cause for *amici curiae* New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (*Kearns, Vassallo & Kearns,* attorneys).

*Christine D. Petruzzell* argued the cause for *amicus curiae* New Jersey Builders Association (*Wilentz, Goldman & Spitzer,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

We granted certification in this matter to determine whether the Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to –141 (UCC Act), permits a municipal construction official to cite a developer for a construction code violation in respect of property

that has been conveyed and for which a certificate of occupancy has issued. The Appellate Division concluded that municipal officials lacked authority to act in those circumstances. *DKM Residential Props. Corp. v. Tp. of Montgomery*, 363 *N.J.Super.* 80, 83, 831 *A.*2d 110 (2003). Because we discern no such limitation to be express or implied from the UCC Act, and because the Act itself directs that the powers conferred be liberally construed, we reverse and remand.

## I.

DKM Residential Properties Corporation (DKM) developed and constructed the Cherry Valley Country Club (Cherry Valley) residential development in the Township of Montgomery (Township). Between 1995 and 1998 as certificates of occupancy were obtained from the Township, DKM sold the homes in the development and retained a possessory interest only in a few structures (a tennis clubhouse, golf clubhouse, cabana pool building, and maintenance building).

In May 2000, the Township's Construction Department began receiving letters from Cherry Valley homeowners about improper installation of the synthetic stucco-like exterior finish (called "Exterior Insulating Finish System" (EIFS)) that was applied to their new homes. The homeowners enclosed engineering reports concluding, after inspection, that the EIFS was not installed according to manufacturer's specifications. As a result of the improper installation, moisture had penetrated exterior walls and had caused decay, rotting, and mold accumulation in the homes.

Upon reviewing the reports submitted, the Township's construction official determined that the installation had not complied with the manufacturer's specifications and was in violation of the New Jersey Uniform Construction Code (Code), *N.J.A.C.* 5:23–1.1 to – 12.12. The municipal construction official consulted a representative of the Department of Community Affairs (DCA) and was advised that the Township had the authority to bring an enforcement action against DKM and, so, the Township's construction

official prepared five notices of violation (NOVs)[1] identifying sixty-two individual instances of violation. Sixty-one of the violations pertained to single-family homes. The remaining violation pertained to the clubhouses and maintenance center owned by DKM. The NOVs stated that DKM's failure to correct the violations within a specified timeframe would result in the imposition of fines in the amount of $500 per week.

The first NOV issued on December 12, 2000. It alleged that DKM had installed improperly the EIFS of nine homes and demanded that DKM reinstall the EIFS by January 8, 2001. DKM appealed to the Township's Construction Board of Appeals (Board), initially challenging the NOV on three grounds: the Township lacked jurisdiction because DKM no longer owned the properties; there was no violation of the Code; and the Township's compliance demands were unreasonable. An added fourth challenge claimed that because the Township failed to serve the NOVs on the homeowners when DKM was served, the NOVs were void.

DKM also filed a complaint in lieu of prerogative writ in February 2001, naming as defendants the Township and the Board. The action sought to have the NOV vacated and the Board enjoined from proceeding with a hearing. DKM moved for summary judgment, and the Board and the Township moved to dismiss the complaint for failure to exhaust administrative remedies. A motion for summary judgment was filed later by defendants.

From February through July 2001, while the motions were pending, the Township issued the four other NOVs concerning

---

[1] Specifically, the NOVs alleged: 1) violation of the 1995 Council of American Building Officials (CABO) code § 703.1, a sub-code that specifies that "[a]ll exterior walls shall be covered with approved materials designed and installed to provide a barrier against the weather ...;" 2) failure to install the EIFS in accordance with manufacturer's specifications, as approved by the Building Officials and Code Administrators (BOCA); and 3) violation of *N.J.A.C.* 5:23–2.21, which sets forth requirements for construction control.

various properties. Each required compliance by a specific date. DKM appealed to the Board on each and amended accordingly its complaint pending in the Law Division.[2]

The Board conducted three days of hearings and rendered decisions memorializing the Board's conclusions that: 1) the Township had the authority to issue NOVs; 2) the faulty installation of EIFS constituted a Code violation; 3) the compliance dates demanded in the NOVs were reasonable; and 4) the NOVs were not invalidated merely because the homeowners were not served concurrently with DKM. The Board ordered DKM to submit a remediation plan, subject to the consent of the homeowners whose properties were the focus of the first NOV.

On April 3, 2001, the Law Division stayed all aspects of the Board's decision, with the exception of the requirement that DKM submit a remediation plan.[3] In respect of the complaint, the court granted summary judgment to the Township and the Board, and dismissed DKM's complaint. In so doing, the court rejected DKM's purely legal argument that the Township lacked authority

---

[2] The fifth NOV, to which the parties refer, does not appear in the record before us. However, because DKM is no longer participating in the appeal or contesting any issues, the record deficiency appears to be of no moment.

[3] We note that DKM filed another amended complaint, but nonetheless submitted a plan to the Board "under protest." The Board reviewed the remediation plan and directed certain revisions for the plan's approval. DKM's final remediation plan was accepted by the Township and included all the homes that were listed in the five NOVs, with the exception of those homes that currently were being remediated or had been remediated. The final remediation plan required all aggrieved homeowners to consent in writing to the remediation that DKM would undertake. The consent form stated that if the homeowner declined remediation by DKM, DKM would be under no further obligation pursuant to the NOVs. The plan also revoked all fines levied against DKM, but preserved the Board's right to re-institute the fines if DKM failed to comply with the schedule included with the final remediation plan. Those fines were to accrue on the basis of $500 per week, beginning with the original compliance date of October 5, 2001, for the homes listed in the first three NOVs. Fines for homes listed in the last two NOVs would run, if at all, from the date of DKM's failure to comply with the revised schedule.

under the UCC Act to issue an NOV to a builder once a certificate of occupancy had issued. The stay granted to DKM was vacated.

DKM appealed and, thereafter, its motion for a stay pending appeal was denied by the Law Division, by the Appellate Division, and by this Court. On the merits of DKM's appeal, however, the Appellate Division reversed the judgment below and remanded for entry of an order vacating the summary judgment entered in favor of the Township and the Board, reinstating the amended complaint, and granting summary judgment to DKM. *DKM Residential Props., supra,* 363 *N.J.Super.* at 95–96, 831 *A.*2d 110. The panel held that neither the UCC Act nor its regulations authorized the Township to bring an enforcement proceeding against DKM concerning property that DKM no longer owned. *Id.* at 91–92, 831 *A.*2d 110. The court determined that the municipal enforcing agency was authorized to bring an enforcement proceeding against a builder/owner/developer only during the construction process. *Id.* at 92, 831 *A.*2d 110. A contrary result, the court stated, would undermine the UCC Act's purposes of encouraging innovation, eliminating regulatory measures that unnecessarily increase new development costs, and increasing the feasibility of modern construction. *Id.* at 91, 831 *A.*2d 110. The Appellate Division panel also expressed concern about homeowners using the Code's regulatory enforcement process to pursue private claims, thereby unfairly shifting the cost of such actions to unaffected taxpayers. *Id.* at 95, 831 *A.*2d 110. In a concurring opinion, Judge Wefing noted the absence of any allegation in the NOVs of improperly issued certificates of occupancy or the abandonment of homes due to substandard construction, suggesting that such allegations might have made the Township's argument more sympathetic. *Id.* at 96, 831 *A.*2d 110.

We granted the petition for certification filed by the Township and Board. 179 *N.J.* 311, 845 *A.*2d 136 (2004). DKM has not participated in the proceedings before us. We take from DKM's non-participation that the particular violations are no longer in controversy and we are confronted here only with the legal

challenge to the municipal enforcing entity's authority to act against a developer after a certificate of occupancy has issued. We are benefited here by the vigorous involvement of both the New Jersey Builders Association (NJBA) and the New Jersey League of Municipalities (League), which were granted amicus curiae status.

## II.

The Legislature enacted the UCC Act in 1975 to address the escalating costs of construction. *L.* 1975, *c.* 217, § 1. The enactment states clearly its purpose: to reduce construction expense by eliminating the divergent and burdensome municipal construction codes in existence at the time. *N.J.S.A.* 52:27D–120. Accordingly, the UCC Act provides for promulgation by the DCA Commissioner of a uniform construction code to establish unitary up-to-date construction standards, and further provides for standardization of enforcement practices to preempt conflicting municipal policies. *N.J.S.A.* 52:27D–122(b), –122.1(a), and –123.1. The UCC Act is remedial in nature, and designed to address directly matters affecting health, safety and welfare. *See Cyktor v. Aspen Manor Condo.*, 359 *N.J.Super.* 459, 467, 820 *A.*2d 129 (App.Div. 2003) (quoting Commissioner of DCA's discussion of UCC Act's purpose). By its own terms, its provisions must receive liberal construction to advance its purposes. *N.J.S.A.* 52:27D–141.

The UCC Act charges the DCA Commissioner with all powers necessary or convenient to effectuate its purposes, including the power to enforce the uniform construction code and related sub-codes (collectively, the Code) promulgated pursuant to the UCC Act's authorization, and to prosecute, or cause to prosecute, violators of the UCC Act or its Code. *N.J.S.A.* 52:27D–124; *see also Cyktor, supra,* 359 *N.J.Super.* at 466–67, 820 *A.*2d 129. The Commissioner is assisted in that responsibility by locally appointed and State-certified municipal construction officials, and subcode officials (collectively known as the municipal enforcing agency). *N.J.S.A.* 52:27D–126; *see also N.J.S.A.* 52:27D–127 (establishing

construction boards of appeals to hear and decide appeals from decisions by enforcing agencies).

The specific power in question here is the municipal enforcing agency's authority to issue a notice of a violation to a builder concerning construction for which a certificate of occupancy has issued. To address the issue, we turn first to the penalty provision, *N.J.S.A.* 52:27D–138, which authorizes the imposition of sanctions in the form of monetary penalties on violators of the UCC Act or the Code. Subsection a. addresses the issuance of penalties to any person or corporation, who

(1) Violates any of the provisions of [the] act or rules promulgated hereunder;

(2) Constructs a structure or building in violation of a condition of a building permit;

* * *

(4) Makes a false or misleading written statement, or omits any required information or statement in any application or request for approval to an enforcing agency or the department . . . .

[*N.J.S.A.* 52:27D–138].4

Subsection c. of *N.J.S.A.* 52:27D–138 makes violators subject to various monetary penalties, subject to certain limitations. Violations of subsection a.(3) of *N.J.S.A.* 52:27D–138 (failure to comply with an order issued by an enforcing agency or the department), constitute a separate and continuing offense for each day or week, as pertinent, that the order is not obeyed. Subsection c. treats differently offenses under a.(1) and (4): it constitutes a single offense to violate the UCC Act or its regulations, or to make a false or misleading written statement in an application or request for approval.

The UCC Act's implementing regulations detail the notice and service requirements in respect of violations and the imposition of penalties. Specifically, *N.J.A.C.* 5:23–2.30, which authorizes the

---

4 Other violations listed in *N.J.S.A.* 52:27D–138 are not pertinent in this appeal.

issuance of notices of violation and sets forth the information that must be included in such NOVs, provides in pertinent part:

(a) Whenever the construction official or the appropriate subcode official shall determine that there exists a violation of the provisions of the regulations or where there exists a violation of a permit or certificate issued under the regulations, *the construction official shall issue a notice of violation and orders to terminate directing the discontinuance of the illegal action or condition and the correction of the violation.*

(b) *The notice and orders shall contain* at least the following information:

1. The name and address of the owner; the address at which the violation occurred; *the name and address of the person to whom the order is directed, and if it be other than the owner, a copy shall be delivered to the owner or his agent stating that the owner bears joint responsibility for bringing about compliance with the person named* and that if a penalty is imposed, the enforcing agency will not issue a certificate of occupancy until such penalty has been paid; the permit number, a citation to the sections of the regulations violated; an order to terminate violations within a time specified in the order; the amount of penalty assessed, if any, and if cumulative, an explanation of the method of computation; and shall be signed by the appropriate subcode official and the construction official.

2. Unless an immediate hazard to health and safety is posed, the construction official shall permit such time period for correction as is reasonable within the context of the situation.

[ (Emphasis added).]

The courts below, as well as the parties and amici, have differed widely on the meaning of those statutory and regulatory provisions in respect of a municipal enforcing agency's authority to cite a builder who no longer is in possession of property. We must now determine how to apply the pertinent provisions in a manner that will promote the UCC Act's goal of uniform and concerted enforcement of the modern standards of construction established through the Code.

### III.

As with any question of statutory interpretation, we start with the plain language of the legislation. *Franklin Tower One L.L.C. v. N.M.*, 157 *N.J.* 602, 613, 725 *A.*2d 1104 (1999). Here it is not clearly apparent from the UCC Act's penalty provision whether there exists authority to penalize a developer for a Code violation after a certificate of occupancy has issued. *N.J.S.A.*

52:27D–138 on its face reveals no express or clearly implied temporal limitation on the Commissioner's authority, or that of the municipal enforcing agency, to impose sanctions in the form of monetary penalties on violators of the UCC Act or its regulations. Moreover, the nature of the penalties authorized do not signal a necessary temporal limitation on the authority to cite and impose a sanction on a developer, after a certificate of occupancy has issued, for a violation of the UCC Act or its regulations.

As may be observed from the legislation, the UCC Act accords different punishment for different types of violations. *N.J.S.A.* 52:27D–138a.(1) and (4) violations are treated as a single offense for purposes of fashioning an appropriate penalty. Others are penalized as ongoing violations carrying a penalty that increases in amount the longer the violation remains unabated. *N.J.S.A.* 52:27D–138 thus creates a variety of penalties or sanctions to punish violators of either the UCC Act's specific provisions, or its regulatory requirements. The penalties do not serve purely a coercive purpose. Some clearly are coercive, due to their ongoing and accruing nature until compliance is secured. Some are punitive, punishing particular violations by a discrete fine. Both types of penalties promote the purposes of the UCC Act by punishing to secure compliance as well as to deter future noncompliance with the Code.

Because the penalties accomplish goals other than merely to secure immediate compliance with the UCC Act by exerting a continuing and increasing penalty for an unabated condition, the penalty section does not evince a legislative intent to restrict penalty enforcement to actions only against the landowner in possession, and not against a violating developer who had been issued a certificate of occupancy on the property. We can discern no clear indication in the penalty provision that compels a restrictive interpretation of its terms, one that would support a prohibition against issuance of a penalty against a developer *after* a certificate of occupancy has issued. Indeed, we find nowhere in the UCC Act any express limitation against the imposition of

penalties on a developer after a certificate of occupancy has issued. The only expression on the subject is contained in the regulation governing issuance of the notice of violation. It states that the notice and accompanying orders may issue to both a homeowner and another, and it directs joint responsibility for bringing about any required compliance. *See N.J.A.C.* 5:23–2.30(b)1.

When interpreting a statute or regulation, we endeavor to give meaning to all words and to avoid an interpretation that reduces specific language to mere surplusage. *Franklin Tower, supra,* 157 *N.J.* at 613, 725 *A.*2d 1104; *see also* Norman J. Singer, 2A *Sutherland Statutory Construction* § 46:06, at 190–92 (6th ed.2000). A sensible application of *N.J.A.C.* 5:23–2.30(b) would permit a penalty to issue against a developer not in possession of the property in order to highlight and punish the violation of a regulation and, as required, to compel assistance with abatement of the violation. On the other hand, it would be patently unreasonable and, therefore, unfair to apply the regulation to allow an NOV and penalty to issue, holding a developer responsible for a continuing violation when homeowner consent is required for access to cure, and consent is withheld. That said, on the question of legal authority to issue an NOV and to order an authorized penalty against a developer after a certificate of occupancy has issued, we conclude that the UCC Act and its regulations reasonably permit such action.

The secondary question is whether the municipal enforcing entity is empowered to take such action against a developer. It is clear that the DCA, through its Commissioner, has assumed that it can issue penalties to a developer for violation of the Code involving property no longer in the developer's possession and control, and has acted on that assumption. *See Cyktor, supra,* 359 *N.J.Super.* at 464, 820 *A.*2d 129. The decision of the Appellate Division in *Cyktor* reflects agreement with that position, so long as the Commissioner's authority is not exercised after the statute of repose, *N.J.S.A.* 2A:14–1.1, becomes applicable, barring a penalty

action against a developer. *See Cyktor, supra,* 359 *N.J.Super.* at 474–75, 820 *A.*2d 129. The statutes and regulations in effect at the time of the Township's action against DKM do not support the conclusion that the municipal enforcing authority has less power than the Commissioner in this respect. The regulations confer expansive authority upon municipal enforcing officials. Their powers are broad, although not coextensive with that of the Commissioner of DCA. *Compare N.J.S.A.* 52:27D–126 (requiring each municipality to appoint a construction official and necessary subcode officials to administer and enforce Code) *and N.J.A.C.* 5:23–2.30(a) (authorizing NOVs by municipal enforcing officials when "there exists a violation of the provisions of the regulations or where there exists a violation of a permit or certificate issued under the regulations"), *with N.J.S.A.* 52:27D–124 (conferring on DCA Commissioner "all powers necessary or convenient to effectuate the purposes of the act").[5]

Although the question before us is one that is not free from doubt, the UCC Act is designed to protect the health, safety, and welfare of people, and therefore its powers should be given liberal interpretation so the various enforcing authorities can act. The Act's provisions specifically include a legislative direction to be generous when in doubt about its powers. *See N.J.S.A.* 52:27D–141. Absent any express or clearly implied limitation on the municipal enforcing agency's authority, we do not find a general lack of power on the part of the municipal enforcing agency to issue an NOV with an appropriate penalty to a developer notwith-

---

[5] We take note of the rule proposal and rule adoption notices published in the New Jersey Register by the DCA that clarified the municipal enforcing authority's powers and specifically recognized the authority to issue citations for health and safety violations after a certificate of occupancy or of approval has issued. *See* 35 *N.J.R.* 2423(a); 35 *N.J.R.* 4713(a); *N.J.A.C.* 5:23–2.23(p). Although those regulations post-date this litigation and do not control the question we address, it appears from that recent rule promulgation that the DCA considers a municipal enforcing agency to have continuing authority to issue NOVs. We express no view on the breadth of that authority, as the regulation's application is not before us.

standing that a certificate of occupancy may have issued. Holding a developer subject to issuance of an NOV and a monetary penalty for having failed to comply with the UCC Act and its regulations promotes the salutary public policy goal of compliance with the Code. We hold, therefore, based on the record before us, that the municipal enforcing agency had the authority to issue NOVs after the issuance of a certificate of occupancy to the developer, DKM. Although we do not attempt to address today the full breadth of that authority, at the very least it certainly would seem to encompass Code violations of the sort that would have supported the withholding of the certificate of occupancy in the first instance had they been known.

## IV.

The judgment of the Appellate Division is reversed.

*For reversal*—Justices LONG, LaVECCHIA, ZAZZALI, WALLACE, and RIVERA–SOTO—5.

*Opposed*—None.