NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2328-24

JEAN CLAU S. WRIGHT, a/k/a
JEAN CLAUDE S. WRIGHT,
JEAN-CLAUDE WRIGHT,
JEANCLAUDE S. WRIGHT,
JEAN WRIGHT, and
JEAN C. WRIGHT,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

> APPROVED FOR PUBLICATION
> **January 14, 2026**
> APPELLATE DIVISION

Argued October 9, 2025 – Decided October 29, 2025
Resubmitted December 4, 2025 – Decided January 14, 2026

Before Judges Marczyk, Bishop-Thompson and Puglisi.

On appeal from the New Jersey State Parole Board.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Cody T. Mason, Deputy Public Defender II, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PUGLISI, J.A.D.

At issue in this appeal is whether the commencement of an offender's mandatory parole supervision (MPS) term is tolled when the offender is released from incarceration in the Department of Corrections (DOC) to the custody of Immigration and Customs Enforcement (ICE).  Because the answer to that question is yes, we affirm the New Jersey State Parole Board's (Board) November 26, 2025 final agency decision determining the commencement date of Jean-Claude Wright's MPS term.[1]

## I.

A jury convicted Wright of two counts of first-degree robbery, N.J.S.A. 2C:15-1(a); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree terroristic threats, N.J.S.A. 2C:12-3(a); and two counts of fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4).  For each robbery conviction, Wright was sentenced to eleven years in prison with an eighty-five percent parole ineligibility term and a five-year MPS term, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  The

---

[1] Wright appealed from the Board's April 2, 2025 decision declining to consider his administrative appeal on jurisdictional grounds, and both parties' appellate briefs addressed the jurisdictional issue and the merits of the appeal. On October 29, 2025, we reversed the Board's decision and remanded to the Board for the issuance of a final agency decision, which we now consider.

A-2328-24

sentences were imposed concurrently, and the remainder of the convictions merged into the robbery convictions.

On November 20, 2018, Wright completed his maximum term of incarceration and was released from the DOC to the custody of ICE. He remained in ICE custody until December 1, 2021, when he was released into the community and, according to the Board, began serving his five-year MPS term.

Wright's February 21, 2025 administrative appeal to the Board contended: MPS commences upon the completion of a custodial sentence; because Wright was released from DOC custody on November 20, 2023, his MPS term should not have been tolled during civil detention by ICE; and his MPS term therefore exceeded the imposed sentence, which violated his constitutional rights and warranted immediate remediation under State v. Njango, 247 N.J. 533 (2021). He requested the Board correct the commencement date of his MPS term and communicate the date to the DOC, which would result in immediate termination of his MPS. Pursuant to our remand, the Board issued a final agency decision in which it denied his administrative appeal.

We "ordinarily employ a deferential standard when reviewing a Parole Board administrative determination in the specialized area of parole supervision." Williams v. N.J. State Parole Bd., 255 N.J. 36, 46 (2023). However, we "review decisions construing a statute de novo, owing no deference to the analysis" of lower courts or agencies. State v. Cromedy, 261 N.J. 421, 430 (2025).

"Discerning 'the Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language.'" Williams, 255 N.J. at 46 (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "[L]egislative intent controls because 'statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as consonant to reason and good discretion.'" Haines v. Taft, 237 N.J. 271, 283 (2019) (quoting Roig v. Kelsey, 135 N.J. 500, 515 (1994)).

"We must presume that the Legislature intended the words that it chose and the plain and ordinary meaning ascribed to those words." Paff v. Galloway Twp., 229 N.J. 340, 353 (2017). "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports,

and contemporaneous construction.'" DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

"A statute's words and phrases should 'be read and [interpreted] with their context.'" Williams, 255 N.J. at 46 (alteration in original) (quoting State v. Lopez-Carrera, 245 N.J. 596, 613 (2021)). Judges do not read terms in isolation; instead, they should "consider 'them in context with related provisions so as to give sense to the legislation as a whole.'" Lopez-Carrera, 245 N.J. at 613 (quoting DiProspero, 183 N.J. at 492).

With these standards in mind, we begin our analysis with the text of the statute. "[NERA] provides that a court sentencing a defendant to a term of incarceration for a first- or second-degree crime enumerated in subsection (d) 'shall fix a minimum term of [eighty-five percent] of the sentence imposed, during which the defendant shall not be eligible for parole.'" Njango, 247 N.J. at 546 (quoting N.J.S.A. 2C:43-7.2(a)). "[A] court meting out a NERA sentence 'shall also impose a five-year term of [MPS] if the defendant is being sentenced for a crime of the first degree, or a three-year term of [MPS] if the defendant is being sentenced for a crime of the second degree.'" Ibid. (quoting N.J.S.A. 2C:43-7.2(c)). At issue here is the application of the next section of N.J.S.A. 2C:43-7.2(c), which reads as follows:

> The term of [MPS] shall commence upon the completion of the sentence of incarceration imposed

by the court pursuant to [N.J.S.A. 2C:43-7.2(a)] unless the defendant is serving a sentence of incarceration for another crime at the time the defendant completes the sentence of incarceration imposed pursuant to subsection [(a)], in which case the term of [MPS] shall commence immediately upon the defendant's release from incarceration. During the term of [MPS,] the defendant shall remain in release status in the community in the legal custody of the Commissioner of the [DOC] and shall be supervised by the . . . Board as if on parole and shall be subject to the provisions and conditions of section 3 of P.L.1997, c.117 (C.30:4-123.51b).

The tension here arises in reconciling NERA's requirement MPS commence "immediately upon the defendant's release from incarceration" with its mandate that "[d]uring the term of [MPS,] the defendant shall remain in release status in the community." While these two provisions are typically harmonious, this case creates an ambiguity because, during Wright's detention, he was released from incarceration but was not in the community. We therefore may look to extrinsic evidence to discern whether the legislative intent supports the tolling of MPS during civil detention.[2]

The Legislature enacted NERA "primarily because of New Jersey's alarmingly high rate of parolee recidivism." State v. Thomas, 166 N.J. 560,

---

[2] Immigration proceedings are "civil, not criminal" matters, Arizona v. United States, 567 U.S. 387, 396 (2012). NERA's tolling provision applies where "the defendant is serving a sentence of incarceration for another crime at the time the defendant completes the [NERA] sentence of incarceration imposed." There is no dispute this tolling provision is inapplicable here.

A-2328-24

569 (2001) (citing Stacey L. Pilato, Note, New Jersey's No Early Release Act: A Band-Aid Approach to Victims' Pain and Recidivism?, 22 Seton Hall Legis. J. 357, 364 (1997)), superseded by statute, N.J.S.A. 2C:43-7.2(d) (2001), as stated in State v. Parolin, 171 N.J. 223, 232 (2002). "[T]he purpose of [NERA] was to 'increase prison time for offenders committing the most serious crimes in society.'" Ibid. (quoting S. L. & Pub. Safety Comm. Statement to S. 855 (Apr. 24, 1996)).

NERA's MPS "provision . . . is 'unique and radically different' from the general parole statute, N.J.S.A 30:4-123.45 to .95." State v. Friedman, 209 N.J. 102, 116 (2012) (internal citation omitted). Governor Christie Whitman's signing statement emphasized:

> [T]o ensure that violent criminals who complete their sentence are not released into the community without supervision, the bill provides that such criminals receive post-release parole supervision from the [Board]. The supervision would last five years for first-degree offenders and three years for second-degree offenders. Under previous law, convicted criminals who served [eighty-five] percent of their sentence could have been released without a parole requirement.
>
> [Press Release, Off. of the Governor, Gov. Whitman Signs "No Early Release Act" to Keep Violent Criminals Behind Bars, at 2 (June 9, 1997).]

Thus, the Legislature determined the imposition of MPS in NERA cases was critical for two reasons: 1) the offender has been convicted of a serious,

violent offense, often carrying a substantial prison term; and 2) because of the imposition of an eighty-five percent mandatory minimum term, the offender will likely serve the maximum sentence without becoming eligible for discretionary parole release. See Friedman, 209 N.J. at 116-17 (quoting Cannel, New Jersey Criminal Code Annotated, cmt. 3 on N.J.S.A. 2C:43-7.2 (2011)) (explaining NERA requires the imposition of MPS because the offender will likely serve the maximum sentence imposed). We previously held "the Legislature has spoken in clear and unambiguous terms that a person convicted of a NERA offense must serve" the entire MPS term imposed, which may not be reduced by credits. Salvador v. Dep't of Corr., 378 N.J. Super. 467, 469 (App. Div. 2005).

Our Supreme Court has recognized "the ultimate purpose of parole 'is to help [offenders] reintegrate into society as constructive individuals.'" J.I. v. N.J. State Parole Bd., 228 N.J. 204, 221 (2017) (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 477-78 (1972)). An offender in ICE custody is neither "in release status in the community," nor being "supervised by the [Board] as if on parole," subject to conditions set by the Board. N.J.S.A. 2C:43-7.2(c). Thus, not only does Wright's interpretation of NERA frustrate the important goals of the statute, it renders these provisions meaningless. See M.R. v. N.J. Dep't of Corr., 261 N.J. 322, 338 (2025)

(quoting DKM Residential Props. Corp. v. Twp. of Montgomery, 182 N.J. 296, 307 (2005)) ("[W]e endeavor to give meaning to all words and to avoid an interpretation that reduces specific language to mere surplusage.").

We are satisfied the outcome here does not offend the notions of fundamental fairness articulated by our Supreme Court in Njango. In that case, years after his NERA sentence was imposed, we held Njango was entitled to 2,692 days of service credit, which the sentencing court had denied. Njango, 247 N.J. at 541. The application of credits resulted in Njango's immediate release from incarceration one year and seven months past his maximum incarceration date. Ibid. He filed a petition for post-conviction relief (PCR), seeking either a reduction of his MPS term or to withdraw his guilty plea. Ibid.

In reversing our affirmance of the PCR court's determination, the Supreme Court held Njango was entitled to relief under the fundamental fairness doctrine. Id. at 548. Because "arbitrary government decisionmaking. . . denied Njango a remedy for a wrong," the Court found he was entitled to credit for the time he spent incarcerated when he should have been released to MPS. Ibid. This outcome did not run afoul of the legislative intent because, in that case, "[t]he objective of parole supervision—to protect the public from the risk from violent offenders—was certainly satisfied when

A-2328-24

[Njango] was mistakenly or erroneously incarcerated beyond the prescribed time for his release." Id. at 550.

Here, as the Board noted, Wright was not subject to incarceration beyond his maximum term because of arbitrary state government decisionmaking. Rather, he was detained and eventually released by federal immigration authorities. Because the fundamental fairness concerns implicated in Njango are not present here, its holding does not control the outcome.

We note, as a corollary to MPS, parole supervision for life (PSL) contains a similar provision requiring PSL to "commence immediately upon the defendant's release from incarceration" unless "the defendant is serving a sentence of incarceration for another offense at the time the defendant completes the custodial portion of the sentence imposed" under PSL, in which case PSL "shall not commence until the defendant is actually released from incarceration for the other offense." N.J.S.A. 2C:43-6.4(b). As with NERA, an offender subject to PSL remains in the custody of the Commissioner of the DOC and is supervised by the Board, subject to parole conditions. Compare N.J.S.A. 2C:43-7.2(c), with N.J.S.A. 2C:43-6.4(b). While not explicitly provided in the statute, an offender's PSL term is tolled during civil

A-2328-24

commitment as a sexually violent predator.[3]  See In re Civ. Commitment of R.F., 217 N.J. 152, 179 (2014) (discussing the PSL conditions imposed after the release of an offender civilly committed under the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to .38).

A sensible reading of the statute leads us to conclude the Legislature intended a NERA offender to serve the mandatory three- or five-year MPS term while in the community, not in federal detention.  We therefore discern no basis to disturb the Board's determination Wright's MPS term was tolled while he was detained in ICE custody and commenced upon his release to the community.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[3]  A defendant convicted of a sex offense subject to PSL may also be subject to NERA.  See N.J.S.A. 2C:43-7.2(d)(7) and (8); N.J.S.A. 2C:43-6.4(a).