992 A.2d 811 (2010)
413 N.J. Super. 54
TALL TIMBERS PROPERTY OWNERS ASSOCIATION, INC., Pleasant Acres Farm Campground, Inc., Edward Tilton and Deanna Tilton, Appellants,
v.
NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, Respondent.
No. A-0336-08T1
Superior Court of New Jersey, Appellate Division.
Argued February 23, 2010.
Decided April 26, 2010.
*813 Dennis A. Estis, Woodbridge, argued the cause for appellants (Greenbaum, Rowe, Smith & Davis, attorneys; Mr. Estis, of counsel and on the briefs; Luke J. Kealy and Robert J. Flanagan, III, on the briefs).
Julie Cavanagh, Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Acting Attorney General, attorney; Melissa Raksa, Assistant Attorney General, of counsel; Ms. Cavanagh, on the brief).
Before Judges SKILLMAN, FUENTES and SIMONELLI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
On November 30, 2006, the Department of Community Affairs (DCA) adopted an interpretive regulation, N.J.A.C. 5:23-9.3, which determined that recreational park trailers are subject to the State Uniform Construction Code (Code), adopted under the authority of the Uniform Construction Code Act (UCC Act), N.J.S.A. 52:27D-119 to -141. On June 17, 2008, the DCA adopted a new set of regulations, which established standards for the design, manufacture, and installation of recreational park trailers, N.J.A.C. 5:23-4D.
Appellants, who are a seller of recreational park trailers, the owner of a campground in which recreational park trailers are installed, and the owners of a recreational park trailer, challenge the validity of these regulations on three grounds: (1) the UCC Act does not confer authority upon the DCA to regulate recreational park trailers under the Code; (2) the DCA's regulation of recreational park trailers is preempted by the National Manufactured Housing Construction and Safety Standards Act (Manufactured Housing Act), 42 U.S.C.A. §§ 5401-5426, and the regulations adopted thereunder; and (3) the DCA adopted these regulations without conducting the analysis required by the Regulatory Flexibility Act, N.J.S.A. 52:14B-16 to -21. We reject appellants' arguments and affirm the validity of N.J.A.C. 5:23-9.3 and N.J.A.C. 5:23-4D.
The applicable administrative regulation defines a "recreational park trailer" as
a trailer type unit that is primarily designed to provide temporary living quarters for recreational, camping, or seasonal use, that meets the following criteria:
1. Is built on a single chassis mounted on wheels;
2. Has a gross trailer area not exceeding 400 square feet (37.15 square meters) in set-up mode, and, if less than 320 square feet (29.72 square meters) in the setup mode, would require a special movement permit for highway transit; and
3. Is certified by the manufacturer as complying with ANSI A119.5.
[N.J.A.C. 5:23-4D.2.]
Before adoption of the regulations challenged in this appeal, the DCA issued a bulletin on January 15, 1994, called Bulletin *814 93-6, which advised local construction officials that recreational park trailers, referred to in that document as "park trailers" or "park models," are subject to regulation under the Code. This document stated in part:
The Department has become aware that certain structures, variously called "park trailers" or "park models" are being bought, sold, installed and used as vacation living quarters, temporary residences, or, occasionally, as primary residences, without having met applicable federal or state standards, and without bearing federal or state labels. This is a violation of the Uniform Construction Code (UCC).
Park trailers are sometimes referred to as recreational vehicles ("RVs") but they are not vehicles. True recreational vehicles are not subject to the Uniform Construction Code....
....
A park trailer is closed construction, which means that it arrives at the site already assembled so that most building, plumbing, mechanical and electrical systems cannot be inspected because they are already concealed. It is intended for permanent or temporary residential use and is not a vehicle. Such a structure must be built and inspected to meet state or federal standards. The required state or federal label is proof that it meets these standards. It is subject to the Uniform Construction Code and should be treated as such in all respects.
Park trailers may be found sited in campgrounds, in mobile home or manufactured home parks or on individual lots. Wherever they are and whether they are used for vacation purposes or as permanent residences, they are subject to the requirements of the Uniform Construction Code....
A code official should not allow the installation of park trailers or park models which do not bear a state approved label (RVIA label) or HUD labels. Permits should be denied and the Department should be notified if such installation is attempted....
....
... Through the enforcement process, if a corrective action is necessary to bring unlabeled units to a safe standard, the plan of action will include the requirement to secure a permit. A corrective action plan will focus on specific life safety issues and will be made available to construction officials who are impacted by the location of such existing units in their jurisdiction. Local construction officials are responsible to ensure that any site specific structures associated with the installation of existing park models have not resulted in any unsafe conditions.
Despite the issuance of Bulletin 93-6, the DCA's policy regarding the regulation of recreational park trailers under the Code was not formalized until adoption of the regulations challenged by this appeal.
In proposing the adoption of N.J.A.C. 5:23-4D, the DCA stated:
Commonly referred to as "park models," recreational park trailers are types of recreational vehicles that are installed in recreational vehicle parks or condominium campgrounds based upon long term ground leases, or ownership in the case of condominium campgrounds. Site built appurtenances such as decks, florida rooms and others are often attached to the recreational park trailers. They are typically used as vacation homes.
Recreational park trailers are constructed in generally the same manner as single family dwellings and incorporate the same types of electrical, plumbing, *815 and mechanical systems as dwellings. They are, however, of "closed construction," that is, they are constructed in factories remote from the point of installation and cannot be inspected for conformity with the Uniform Construction Code (Code) at the point of installation because all the systems are "closed" within walls.
All closed construction, which is not subject to the requirements of the Federal Manufactured Housing Construction and Safety Standards, must be constructed in accordance with the Code and be approved and certified pursuant to Subchapter 4A of the Code (N.J.A.C. 5:23-4A).
The DCA received extensive comments regarding its proposals for adoption of N.J.A.C. 5:23-9.3 and N.J.A.C. 5:23-4D. Those comments and the DCA's responses mirror to a substantial extent the arguments presented in this appeal.

I.
The purposes of the UCC Act include "provid[ing] requirements for construction and construction materials consistent with nationally recognized standards[,]" N.J.S.A. 52:27D-120(a), and "insur[ing] adequate maintenance of buildings and structures throughout the State and ... adequately protect[ing] the health, safety and welfare of the people," N.J.S.A. 52:27D-120(e). To accomplish the legislative objective of protecting the health, safety, and welfare of occupants of buildings and structures, the Legislature delegated authority to the Commissioner of DCA to "adopt a State [Code] for the purpose of regulating the structural design, construction, maintenance and use of buildings or structures to be erected and alteration, renovation, rehabilitation, repair, maintenance, removal or demolition of buildings or structures already erected." N.J.S.A. 52:27D-123(a).
Our Supreme Court has indicated that "the UCC Act is remedial in nature, and designed to address directly matters affecting health, safety and welfare." DKM Residential Props. v. Twp. of Montgomery, 182 N.J. 296, 303, 865 A.2d 649 (2005). "By its own terms, [the UCC Act's] provisions must receive liberal construction to advance its purposes." Ibid.
The key terms in N.J.S.A. 52:27D-123(a) delineating the intended scope of the Code the Legislature authorized the DCA to adopt are "structure" and "building." The Act defines "structure" to mean "a combination of materials to form a construction for occupancy, use, or ornamentation, whether installed on, above, or below the surface of a parcel of land[.]" N.J.S.A. 52:27D-121. The Act defines "building" to mean "a structure enclosed with exterior walls or fire walls, built, erected and framed of component structural parts, designed for the housing, shelter, enclosure and support of individuals, animals or property of any kind." N.J.S.A. 52:27D-121.
The Commissioner of DCA has interpreted these expansive definitions of "structure" and "building" to include recreational park trailers. The Commissioner cited various reasons supporting this interpretation, including:
A recreational park trailer is a combination of materials. In fact, it is a combination of the same types of materials used in any home and it involves all the same safety issues as a home. It is intended for occupancy  the same type of occupancy as any other vacation home....
....
A recreational park trailer is a structure that is enclosed with exterior *816 walls  walls identical in construction to those of any dwelling. It is clearly designed for housing or shelter and it is arranged for the support of individuals. It is equipped with plumbing, electrical and mechanical systems just as is any dwelling.
A recreational park trailer can be distinguished from a conventional recreational vehicle (RV).... It is a special type of RV that is intended for installation in a "park." They are built under a different standard than conventional RVs. The principal difference between the national consensus standard for RVs, ANSI A119.2, and the recreational park trailer standard is that the recreational park trailer standard covers all types of the requirements typically found in a building code while the RV standard does not.
[N.J.A.C. 5:23-9.3(a)(3).]
The Commissioner's conclusion that recreational park trailers are "structures" and/or "buildings" subject to the regulatory provisions of the Code is supported by other sections of the UCC Act that reflect a legislative intent that the Code apply to "premanufactured systems" for human habitation. The list of purposes of the UCC Act include "permit[ting] ... use of modern technical methods, devices and improvements, including premanufactured systems, consistent with reasonable requirements for the health, safety, and welfare of occupants or users of buildings and structures." N.J.S.A. 52:27D-120(c) (emphasis added). In addition, the Act contains a legislative finding that "the need of new construction in the State can be met in part by the use of premanufactured systems ... and that a uniform construction code should include standards to permit the use of such systems." N.J.S.A. 52:27D-122(c); see also N.J.S.A. 52:27D-135. The Act defines a "premanufactured system" as "an assembly of materials or products that is intended to comprise all or part of a building or structure and that is assembled off site by a repetitive process under circumstances intended to insure uniformity of quality and material content." N.J.S.A. 52:27D-121. This definition would encompass any premanufactured structure designed for human habitation, including a recreational park trailer.
Furthermore, if there were a question whether a recreational park trailer falls within the UCC Act's definitions of "structure," "building," and "premanufactured system," an administrative agency's interpretation of a statute it is charged with enforcing will be upheld unless it is "plainly unreasonable." T.H. v. Div. of Developmental Disabilities, 189 N.J. 478, 490, 916 A.2d 1025 (2007) (quoting In re N.J. Tpk. Auth. v. Am. Fed'n of State, County, & Mun. Employees, 150 N.J. 331, 351, 696 A.2d 585 (1997)). The DCA's determination that a recreational park trailer is subject to the Code under these definitions is not "plainly unreasonable" and therefore must be upheld.
Appellants argue that even if a recreational park trailer could be considered a "structure," "building," and "premanufactured system" under the definitions set forth in N.J.S.A. 52:27D-121, the Legislature could not have intended such trailers to be regulated under the Code, because it expressly subjected them to regulation under the Mobile Home Protection Act, N.J.S.A. 46:8C-2 to -21, and the provisions of Title 39 governing the operation of motor vehicles. However, these statutes are directed at different regulatory concerns than the UCC Act and thus do not reflect a legislative intent to foreclose the DCA from subjecting recreational park trailers to regulation under the Code.
*817 The Mobile Home Protection Act only regulates the owners and operators of mobile home parks, see N.J.S.A. 46:8C-2 to -21, not the owners and operators of recreational park trailers. The legislative objective in enacting this statute "was to curb abuses by mobile home park owners on tenants within such parks." Metpark, Inc. v. Kensharper, 206 N.J.Super. 151, 154, 501 A.2d 1068 (Law Div.1985). The Mobile Home Protection Act is not designed to protect the health, safety, and welfare of the occupants of recreational park trailers by establishment of standards for their design, manufacture, and installation. Indeed, the Department of Health and Senior Services, which has been assigned responsibility for administration of the Mobile Home Protection Act, has adopted regulations that require all construction work, plumbing, and electricity in public campgrounds to conform to the Code. See N.J.A.C. 8:22-2.3; N.J.A.C. 8:22-6.1; N.J.A.C. 8:22-9.1. These regulations recognize that the Department of Health and Senior Services' regulation of mobile home park owners and operators and the DCA's regulation of the design, manufacture, and installation of recreational park trailers are complementary, rather than antagonistic, and thus, the Mobile Home Protection Act does not reflect a legislative intent to preclude regulation of recreational park trailers under the Code.
The regulatory authority that Title 39 confers upon the Motor Vehicle Commission regarding recreational park trailers is limited to their operation upon highways; it does not extend to their installation in a mobile home park or campground. Thus, N.J.S.A. 39:10-6 requires a recreational park trailer to be registered with the Motor Vehicle Commission before the owner may operate it on a highway, and N.J.S.A. 39:3-43 confers authority upon the Motor Vehicle Commission "to pass upon the construction and equipment of any vehicle ... with a view to its safety for use in a street or highway[.]" (Emphasis added). However, Title 39 does not require the owner of a recreational park trailer that is simply parked in a mobile home park to register it with the Motor Vehicle Commission, and Title 39 does not confer authority upon the Commission to regulate the safety of a recreational park trailer as a place of human habitation. Therefore, like the Department of Health and Senior Services' regulation of mobile park owners and operators, the Motor Vehicle Commission's regulation of the operation of recreational park trailers on public highways is complementary, rather than antagonistic, to the DCA's regulation of the installation of those trailers in mobile home parks and campgrounds.

II.
We turn next to the question whether the DCA's regulation of recreational park trailers under the Code is preempted by the federal Manufactured Housing Act.
The determination whether a federal law preempts state laws dealing with the same subject matter requires a court to ascertain the intent of Congress in enacting the federal law. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485-86, 116 S.Ct. 2240, 2250-51, 135 L.Ed.2d 700, 716 (1996). In making this determination, a court should "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 485, 116 S.Ct. at 2250, 135 L.Ed.2d at 715 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947)).
One of the primary purposes of the Manufactured Housing Act was to provide *818 for the safety and quality of manufactured homes by establishing uniform federal construction and safety standards. See 42 U.S.C.A. § 5401(b)(3),(6). To accomplish this objective, Congress delegated authority to the Department of Housing and Urban Development (HUD) to adopt national construction and safety standards for manufactured homes. 42 U.S.C.A. § 5403(a)(1).
Although it is undisputed that a recreational park trailer fits within the definition of "manufactured home" contained in the Manufactured Housing Act[1] and thus HUD could establish construction and safety standards for those structures, HUD has elected thus far not to establish federal standards. Instead, HUD adopted a regulation in 1982 which states:
Recreational vehicles are not subject to this part, part 3280, or part 3283. A recreational vehicle is a vehicle which is:
(1) Built on a single chassis;
(2) 400 Square feet or less when measured at the largest horizontal projections;
(3) Self-propelled or permanently towable by a light duty truck; and
(4) Designed primarily not for use as a permanent dwelling but as temporary living quarters for recreational, camping, travel, or seasonal use.
[24 C.F.R. § 3282.8(g).]
Appellants admit that recreational park trailers fall within this exemption from regulation by HUD.
HUD contemplated that this regulation would be only temporary. In the commentary accompanying adoption of this exemption, HUD stated:
[T]he conference report on the 1980 amendments directed the Secretary to consider differing, more flexible standards for smaller manufactured homes (such as park models) whose square footage is between 320 and 400 square feet and are designed to be frequently transported. In commenting on the proposed rule, several manufacturers of smaller units (those between 320 and 400 square feet) outlined the problems that they would face to bring their products in compliance with the Federal Manufactured Home and Construction Safety Standards....
The evident intent of Congress as expressed in the Conference Report, plus the comments received from manufacturers of small units, indicate that the entire body of the existing Standards should not be applied to park models or other units of less than 400 square feet. That, however, would be the result of an immediate elimination of the recreational vehicle exemption. The Secretary has concluded, therefore, that it is necessary to continue the exemption for recreational vehicles of more than 320 but less than 400 square feet until Standards specifically applicable to these units can be prescribed. The Department notes, in this connection, that a comprehensive revision of the existing Standards is now in progress and a proposed rule expected to be published this year. The Department intends to address the question of Standards appropriate for application to smaller units, *819 including park models in the near future, possibly as part of the foregoing general revision.
[Manufactured Home Construction & Safety Standards, 47 Fed.Reg. 28,091, 28,091 (June 29, 1982).]
However, even though nearly twenty years have elapsed since HUD adopted 24 C.F.R. § 3282.8(g), HUD still has not proposed construction and safety standards applicable to recreational park trailers.
Despite the absence of any federal standards, appellants argue that the Manufactured Housing Act preempts any state regulation of the construction and safety of recreational park trailers. In support of this argument, appellants rely upon the statement in Arkansas Electric Cooperative Corp. v. Arkansas Public Service Commission, 461 U.S. 375, 384, 103 S.Ct. 1905, 1912, 76 L.Ed.2d 1, 10 (1983), that "a federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-emptive force as a decision to regulate." See also Ray v. Atl. Richfield Co., 435 U.S. 151, 178, 98 S.Ct. 988, 1004-05, 55 L.Ed.2d 179, 201 (1978) (stating that "`where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such a regulation." (quoting Bethlehem Steel Co. v. N.Y. State Labor Relations Bd., 330 U.S. 767, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234, 1246 (1947))).
The principles that govern a determination of whether a federal statute preempts state regulation, even though the federal agency to which Congress has delegated regulatory authority has not exercised its authority, are set forth in Bethlehem Steel Co., supra, 330 U.S. at 773-74, 67 S.Ct. at 1030, 91 L.Ed. at 1246:
When Congress has outlined its policy in rather general and inclusive terms and delegated determination of their specific application to an administrative tribunal, the mere fact of delegation of power to deal with the general matter, without agency action, might preclude any state action if it is clear that Congress has intended no regulation except its own. In other cases, Congress has passed statutes which initiate regulation of certain activities, but where effective regulation must wait upon the issuance of rules by an administrative body. In the interval before those rules are established, this Court has usually held that the police power of the state may be exercised.... [I]f [a state regulation] relates to what may be considered a separable or distinct segment of the matter covered by the federal statute and the federal agency has not acted on that segment, the case will be treated in a manner similar to cases in which the effectiveness of federal supervision awaits federal administrative regulation[.] The states are in those cases permitted to use their police power in the interval.
[Citations omitted.]
In such a case, the "federal power has been delegated but lies dormant and unexercised." Id. at 775, 67 S.Ct. at 1031, 91 L.Ed. at 1247; see also Sprietsma v. Mercury Marine, 537 U.S. 51, 64-68, 123 S.Ct. 518, 527-29, 154 L.Ed.2d 466, 478-81 (2002); Freightliner Corp. v. Myrick, 514 U.S. 280, 286-87, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385, 391-92 (1995).
In this case, there is no doubt that Congress delegated authority to HUD to adopt construction and safety standards for all manufactured homes, including the recreational park trailers the DCA has *820 subjected to state regulations under the Code. However, even though HUD adopted regulations establishing construction and safety standards for larger manufactured homes, it decided in 1982 to defer adoption of such standards for the smaller manufactured homes the DCA regulates. The question is whether this deferral of the exercise of federal regulatory authority constitutes "an authoritative federal determination that the area is best left unregulated" until HUD adopts its own construction and safety standards, Arkansas Elec. Coop., supra, 461 U.S. at 384, 103 S.Ct. at 1912, 76 L.Ed.2d at 10, or whether New Jersey retains authority "to use [its own] police power in the interval," Bethlehem Steel Co., supra, 330 U.S. at 774, 67 S.Ct. at 1030, 91 L.Ed. at 1246.
The answer to this question is provided by the preemption section of the Manufactured Housing Act, which provides in pertinent part:

Whenever a Federal manufactured home construction and safety standard established under this title [42 U.S.C.S. §§ 5401 et seq.] is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.
[42 U.S.C.A. § 5403(d) (emphasis added).]
As a result of HUD's 1982 decision to temporarily exempt smaller manufactured homes, as defined by 24 C.F.R. § 3282.8(g), from HUD construction and safety standards, there is not any "Federal manufactured construction and safety standard" currently "in effect."
Congress's intent to preempt state regulation of manufactured homes only after HUD exercises its authority to adopt federal construction and safety standards is reinforced by another section of the Manufactured Housing Act, which states:
Nothing in this title ... shall prevent any State agency or court from asserting jurisdiction under State law over any manufactured home construction or safety issue with respect to which no Federal manufactured home construction and safety standard has been established pursuant to [42 U.S.C.A. § 5403(d).]
[42 U.S.C.A. § 5422(a).]
Therefore, the essential prerequisite for federal preemption of state construction and safety standards under 42 U.S.C.A. §§ 5403(d) and 5422(a)  the adoption of a "Federal manufactured home construction and safety standard"  does not exist with respect to the recreational park trailers for which the DCA has established safety standards under the Code, and thus those state standards are not preempted at this time.
This conclusion is reinforced by consideration of the purposes of the Manufactured Housing Act. Those purposes include not only "provid[ing] for the establishment of practical, uniform ... Federal construction standards for manufactured homes," 42 U.S.C.A. § 5401(b)(3), but also "protect[ing] the quality, durability [and] safety ... of manufactured homes," 42 U.S.C.A. § 5401(b)(1), and "protect[ing] residents of manufactured homes with respect to personal injuries ... and property damages," 42 U.S.C.A. § 5401(b)(5). As a result of HUD's 1982 decision to defer the adoption of construction and safety standards for the structures the DCA regulates under the Code, HUD has not yet established "practical, uniform ... *821 Federal construction standards," 42 U.S.C.A. § 5401(b)(3), for this type of manufactured home. However, in the absence of regulation by HUD, the DCA's regulation of such manufactured homes serves the congressional purposes of "protect[ing] the quality, durability [and] safety ... of manufactured homes," 42 U.S.C.A. § 5401(b)(1), and "protect[ing] residents of manufactured homes with respect to personal injuries... and property damages," 42 U.S.C.A. § 5401(b)(5), thereby avoiding the regulatory vacuum that would be created if the Manufactured Housing Act were construed to preempt State regulation of manufactured homes for which HUD has not yet established federal construction and safety standards.

III.
Appellants' final argument is that the DCA established standards for the design, manufacture, and installation of recreational trailers without conducting the analysis required by the Regulatory Flexibility Act. This argument is clearly without merit and only requires brief discussion. R. 2:11-3(e)(1)(E).
The Regulatory Flexibility Act requires an agency "developing and proposing a rule for adoption ... [to] utilize approaches which will accomplish the objectives of applicable statutes while minimizing any adverse economic impact of the proposed rule on small businesses of different types and of differing sizes." N.J.S.A. 52:14B-18. An agency notice of a proposed rule must include a "regulatory flexibility analysis regarding the rule." N.J.S.A. 52:14B-19.
The DCA's proposals for the adoption of both the rules challenged in this appeal included sections entitled "Regulatory Flexibility Analysis." See 38 N.J.R. 3710, 3717 (Sept. 18, 2006); 39 N.J.R. 2411, 2412 (July 2, 2007). These regulatory flexibility analyses incorporated by reference "Economic Impact" statements that also accompanied the rule proposals. Thus, appellants' argument is not that the DCA failed to issue any regulatory flexibility analysis, but rather that the conclusions reached in those analyses are incorrect. Stated another way, appellants' argument is not that there was any procedural defect in the rule proposals, but rather that the rules are unreasonable because the DCA failed to recognize certain alleged costs that small businesses would incur in complying.
The DCA's responses to the various comments submitted in response to the rule proposals show that DCA did in fact consider those alleged costs and rejected objections to the proposed rules on those grounds. We perceive nothing unreasonable in the DCA's responses to those objections.
Accordingly, we affirm the validity of N.J.A.C. 5:23-9.3 and N.J.A.C. 5:23-4D.
NOTES
[1] The Manufactured Housing Act defines "manufactured home" to mean "a structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty feet or more in length, or, when erected onsite, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities...." 42 U.S.C.A. § 5402(6); see also HUD's definition of "manufactured home" in 24 C.F.R. § 3280.2.